# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott Smith, | Case No. 0:17-cv-2032-ECT-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Bradley Pizza, Inc., Pamela M. Dahl, | |
| Defendants. | |

    This is an action by Scott Smith seeking injunctive relief under Title III of the Americans with Disabilities Act. The lawsuit involves Mr. Smith's allegations that there are several architectural barriers to access at the public accommodation owned and operated by the Defendants, Bradley Pizza, Inc., and Pamela Dahl. Generally speaking, Mr. Smith's position is that the Defendants have failed to bring the parking lot and entryway into compliance with the applicable legal requirements under the ADA and the ADAAG. The Defendants assert that Mr. Smith lacks standing to bring his claim, that the remediation he requests is not readily achievable, and that he comes to the suit with unclean hands, among other defenses.

    The litigation is now before the Court on the parties' competing motions to compel discovery (Pl.'s Mot., ECF No. 138; Defs.' Mot., ECF No. 144). The Court held a hearing on the parties' motions on October 30, 2018. Based on the briefing, the declarations and exhibits submitted by the parties, oral argument, and the Court's familiarity with this lengthy and contentious litigation, Mr. Smith's motion is denied, and the Defendants' motion is granted in part and denied in part.

## I.    Relevant Procedural History and Rule 37

    As with all civil matters on the Court's docket, the Court has attempted to manage this case to ensure its "just, speedy, and inexpensive" resolution. Fed. R. Civ. P. 1. In an effort to keep costs for both sides under control, the Court encouraged the parties to use an informal process to help resolve discovery and other pretrial disputes. However, the parties used the informal process with such a combination of

frequency and acrimony that it appeared the informal dispute process may have been worsening rather than alleviating the contentiousness of the litigation. This ultimately led the Court to advise counsel in an October 3, 2018 letter that because this case generated an unreasonable number of disputes, the Court would require all future discovery disagreements to be raised by formal motion. (ECF No. 137 at 1.) The Court further instructed counsel that it would "seriously consider requiring a payment of expenses by the non-prevailing party pursuant to Rule 37(a)(5)" if they were unable to work matters out on their own without the need for formal motion practice. (*Id.* at 3.)

Rule 37 provides that if a party fails to answer an interrogatory submitted under Rule 33 or to produce documents pursuant to a request under Rule 34, the party seeking discovery may move for an order compelling an answer or production. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). The Rule further provides that if a motion to compel is denied, a court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless the "motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). In deciding whether a motion was substantially justified, the Court considers whether a party's "'position was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. To warrant such a characterization, the position must have reasonable basis both in law and fact." *In Re Nat'l Hockey League Players' Concussion Injury Litig.*, MDL No. 14-cv-2551 (SRN/BRT), 2017 WL 3276873, at *2 (D. Minn. July 31, 2017) (discussing substantial justification issue under Rule 37 and quoting *Conklin v. Astrue*, 282 Fed. App'x. 488 (8th Cir. 2008)).

## II. Plaintiff's Motion

Mr. Smith's motion addresses two issues. First, he argues that Ms. Dahl failed to sign the initial set of answers to his interrogatories. Second, Mr. Smith seeks to compel the production of financial information from both Ms. Dahl and Bradley Pizza. Both requests are denied.

### A. Signed Interrogatory Answers

Mr. Smith's motion to compel Ms. Dahl to sign answers to the initial set of answers to interrogatories served in this matter is meritless. The parties' briefing and

the discussion at the hearing confirmed that Ms. Dahl has signed supplemented and amended answers to interrogatories, which effectively supersede any earlier answers. Moreover, those earlier interrogatories were propounded before Ms. Dahl was even served with this lawsuit.[1] Under these circumstances, Mr. Smith has not shown that Ms. Dahl failed to comply with a discovery obligation, and he is not entitled to an order compelling her to sign the initial interrogatory responses.

As to this issue, the Court finds that the fee shifting contemplated by Rule 37(a)(5) is appropriate. Mr. Smith articulated no reason why a signature for the now-superseded initial answers is required. The Court finds that this portion of the motion to compel lacks any basis in law or fact and is unnecessary and frivolous. Therefore, as explained at Part I.C. below, the plaintiff, plaintiff's counsel, or both are required to pay the expenses incurred by the Defendants in responding to the motion.

### B. Production of Financial Information

Mr. Smith also moved to compel financial information from both Ms. Dahl and Bradley Pizza, arguing that their financial positions are relevant to their contention that certain remediation sought at the property is not "readily achievable" within the meaning of the ADA. The Court discusses the Defendants separately.

#### 1. Pamela Dahl's Financial Information

With respect to Ms. Dahl, the motion is denied and an award of expenses is warranted pursuant to Rule 37(a)(5). In their response to the motion, the Defendants have shown that the requests for production of financial information from Ms. Dahl were not served until October 9, 2018, and an agreement had been reached that the responses to the requests were not due until October 31, 2018. Because this information was not due until well after the motion to compel was filed on October 12, 2018, Mr. Smith's motion was premature and unnecessary. Plaintiff's decision to request court intervention on this issue when the discovery responses were not

---

[1] At the hearing, plaintiff's counsel raised, for the first time, that Ms. Dahl has not provided the supplemental and amended answers to interrogatories that are signed under oath. This issue is not properly before the Court because plaintiff did not base its motion on the oath requirement or raise this issue prior to the hearing.

overdue suggests an improper motivation in filing the motion. The plaintiff presents no substantial justification for raising this issue prematurely.

## 2. Bradley Pizza's Financial Information

Bradley Pizza argues that its financial information is irrelevant because it is merely a tenant of the building owned by Ms. Dahl; pursuant to the terms of its lease, Bradley Pizza does not have responsibility for the repair or maintenance of the parking lot, the exterior doorway, and other common areas outside its pizza restaurant. Therefore, it asserts that its financial condition is not relevant to any issue involved in the litigation. After careful review, the Court agrees.

Addressing the relevance objection at the hearing, counsel for Mr. Smith cited *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000), and *Kreisler v. Second Ave. Diner Corp., et al.*, No. 10-cv-7592 (RJS), 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012). Mr. Smith argues that these cases stand for the proposition that a party is not permitted, via contract, to escape its responsibilities for compliance with the ADA. It follows, plaintiff contends, that Bradley Pizza can still be held responsible for achieving ADA compliance even though its lease allocates the obligation for exterior and parking-lot issues to Ms. Dahl. Therefore, Mr. Smith asserts that Bradley Pizza's financial condition is discoverable because the resources of a defendant inform the court's calculus for whether certain remediation is readily achievable. Unfortunately for Mr. Smith, the Court is not persuaded that either case supports his position.

The issue in *Botosan* was whether the owner or landlord of a facility could avoid liability under the ADA by shifting the responsibility for maintenance or repairs to its tenant pursuant to the terms of a lease. 216 F.3d at 832–34. The *Botosan* court held that the lease agreement between the owner and the tenant "did not transfer all liability for ADA compliance to the lessee." *Id.* at 834. It did not hold that a lease could never determine whether a landlord or tenant has responsibility for ADA compliance. Here, Bradley Pizza is the tenant and the question is whether it has responsibility for ADA compliance in common areas over which it contractually has no control, namely the parking lot and exterior. *Botosan* does not even suggest that the ADA prevents such an allocation of responsibilities for ADA compliance between a landlord and a tenant. *Cf id.* at 833 (citing *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 767 (D. Or. 1997), *supplemented by*, 1 F. Supp. 2d 1159 (D. Or.

1998) (holding that the landlord, rather than the tenant, is responsible for ADA compliance in common areas)).

The *Kreisler* decision does not support Mr. Smith's position either. Not only was this issue nowhere addressed in the order, but unlike this case, *Kreisler* involved claims regarding compliance within the restaurant operated by the tenant of the building. *See* 2012 WL 3961304, at *1 (summarizing access issues involving both the exterior and interior of the restaurant). In contrast, this case is limited to issues with the parking lot and entry area of the building, areas controlled by the landlord alone. *Kreisler* is inapplicable.

Mr. Smith also cites *Heinzl v. Starbucks Corp.*, No. 2:14-cv-1316, 2015 WL 2371436 (W.D. Pa. May 18, 2015), in support of his argument that Bradley Pizza's financial information is relevant. He suggests that the *Heinzl* court held "that Starbucks could not escape ADA liability with respect to parking spaces it leased from its landlord." (Pl.'s Letter at 1.) A close reading of *Heinzl* illustrates why the case is not helpful to Mr. Smith. The *Heinzl* court addressed Starbucks' motions for reconsideration of the rejection of its earlier requests for protective orders to limit discovery. Starbucks was the tenant at the locations in dispute. It had asked the court to issue protective orders "on grounds that Starbucks did not control or occupy the parking lots where the alleged ADA violations existed…." 2015 WL 2371436, at *1–2. That argument also formed the basis for Starbucks' motion to dismiss, but the court denied the motion to dismiss, reasoning that the Starbucks lease with its landlord could not be considered on a motion to dismiss because it was beyond the pleadings. *Id.* at *1. The court found that, at the motion to dismiss phase, it was "premature to examine the leases and determine the amount of control Starbucks has over the parking lots." *Id.* at *3. Contrary to Mr. Smith's contention, the *Heitzl* court did not reach the question at that time regarding whether Starbucks' lease in fact precluded its liability for ADA compliance in the parking lot.

In marked contrast, this Court is not being asked to decide a motion to dismiss, but to determine whether Bradley Pizza's financial position is relevant to the claims or defenses in this action. Here, we are well past the pleadings stage and the lease is fair game for the Court to consider in deciding this discovery dispute. The relevant portion of the *Heinzl* decision is simply inapposite.

Instead, an examination of the lease resolves the discovery dispute before the Court. The lease provides that Bradley Pizza leases approximately 1600 square feet of commercial space to operate a pizza restaurant "together with not less than 10 unassigned … spaces of the parking lot adjoining the premises for" Bradley Pizza's use. (Lease Agreement, Article 1, ECF No. 154.) The lease also clearly requires the landlord to ensure that construction of improvements "to the premises or the building and site which contain the premises" comply with "all laws, ordinances, regulations, statutes or other governmental regulatory schemes, no matter how designed." (Lease Agreement, Article 2.b.) That duty specifically includes the landlord's agreement that it "has the specific obligation to comply with the Americans with Disabilities Act and all regulations promulgated thereto at its own expense." (*Id.*) Further, the lease clearly provides that the landlord has the responsibility for keeping and maintaining all common areas, including the parking lot. (*Id.*, Article 8.f.) Moreover, the lease assigns responsibility for maintenance and repairs to the exterior of the premises exclusively to the landlord, not Bradley Pizza. (*Id.*, Article 8.a.)

These provisions of the lease clearly show that Bradley Pizza has neither control over nor responsibility for any maintenance or improvements relating to the parking lot and exterior spaces at issue, including the sidewalk, the access aisle, and the exterior door. Even if documents showing Bradley Pizza's financial information revealed that Bradley Pizza could afford to make the improvements Mr. Smith requests, because Bradley Pizza does not control the exterior areas and parking lot, its financial health has no bearing on the readily-achievable defenses in the circumstances of this case. Mr. Smith has pointed to nothing in the record that would suggest Bradley Pizza has responsibility for the exterior and common areas that are at issue in this litigation notwithstanding these provisions in the lease. Nor has he offered any relevant authority to suggest that Bradley Pizza's financial condition is relevant under these circumstances.

Mr. Smith suggests that finding this information is irrelevant based on the terms of the lease intrudes on merits decisions that are the ultimate province of the District Court on a dispositive motion. (Pl.'s Letter at 1–2 ("Smith is not asking the Court to make a dispositive determination regarding Bradley Pizza's liability on Smith's ADA claim in this case. That is an issue that [is] properly reserved for the district court's order on a dispositive motion.").) Here the Court does not determine the merits of the readily-achievable affirmative defense asserted by the Defendants in

this litigation. Rather the Court has concluded, based on the specific facts of this case and the clear language of the lease, that Bradley Pizza's financial condition has no bearing on the outcome of the readily-achievable defense.

In sum, the Court finds that Bradley Pizza's financial information is not relevant and Mr. Smith's motion to compel is denied. However, the Court finds that the motion to compel financial information from Bradley Pizza was substantially justified within the meaning of Rule 37(a)(5), so no award of expenses incurred by the Defendants in responding to this portion of the motion is appropriate.

### C. Award of Expenses and Fees

Because Mr. Smith's motion to compel is denied and the Court finds that his motion was not substantially justified in all but one respect, Mr. Smith, his counsel, or both are required to pay the Defendants' expenses, including attorney's fees, incurred in responding to the motion. Within 14 days of the date of this Order, the Defendants must file a short letter memorandum (not to exceed 5 pages) and any affidavits, declarations, and exhibits to establish the expenses and fees incurred in responding to Mr. Smith's motion. However, these submissions should not include a request for reimbursement of the fees and expenses reasonably attributable to the request for Bradley Pizza's financial information. Within 7 days after the Defendants file such a declaration and letter memorandum, Mr. Smith may file a written response.

## II. Defendants' Motion

Defendants' motion to compel raises three separate issues. First, Defendants ask the Court to require Mr. Smith to disclose settlement agreements he has entered in other ADA litigation as well as the full amount of financial compensation he has received from those settlements. Second, Defendants seek an order requiring Mr. Smith's expert witness, Peter Hansmeier, to refund the expert-witness fees Defendants were required to pre-pay to cover the cost of his deposition. Finally, Defendants seek an order compelling Mr. Smith to remit the remaining unpaid balance for the deposition expenses incurred by the defense expert, Julee Quarve-Peterson. The Defendants' motion is granted in part and denied in part as discussed below.

### A. Discovery Related to Other Settlements

Defendants' request for an order compelling production of Mr. Smith's prior settlement agreements in ADA cases and information related to those prior settlements[2] is granted in part. Defendants argue that the information they seek is relevant to their defenses, including their argument that Mr. Smith lacks standing to pursue his claims and that he is not entitled to injunctive relief because he has unclean hands. Mr. Smith contends that this information is irrelevant. He also asserts that many of the settlement agreements are confidential, so production will require notifying defendants from other ADA cases so that they may object to the disclosure, a process he describes as unduly burdensome.

Neither party has pointed to any authority addressing the discoverability of settlement agreements and related information in ADA litigation,[3] and the Court's own research has not identified any particularly instructive decisions. Nevertheless, the Court finds that the information requested by the Defendants may well be relevant to the claims and defenses in this litigation. Assuming without deciding that a defense of unclean hands is available in a case like this, the Court finds that the requested information concerning the compensation Mr. Smith has received from prior settlements could form the factual basis for the defendants' position that Mr. Smith should not receive injunctive relief because his motivation in bringing this lawsuit is for financial gain rather than to obtain ADA compliance. The settlement agreements themselves may also support a defense that injunctive relief is not required because Mr. Smith has not demanded strict compliance with the ADA in previous cases he has resolved. This information could support the Defendants' position that Mr. Smith cannot satisfy the injury-in-fact requirement for standing

---

[2] Defendants' counsel suggested that production of information from the two-year period prior to the hearing would be sufficient. The Court agrees that this is a reasonable period and the production required by this Order shall be limited to the two-year period preceding the October 30, 2018 hearing.

[3] Defendants have cited cases that stand for the proposition that settlement agreements from prior litigation are not immune from discovery and that their confidentiality does not necessarily make disclosure unwarranted, and the Court finds this authority compelling. (Defs.' Mem. at 4–7, ECF No. 146.)

because they may reveal that he does not need strict compliance with the ADAAG regulations.

However, the Court also finds that production of confidential settlement agreements is not proportional to the needs of this case. There are legitimate reasons that non-parties may have insisted on confidentiality when they resolved ADA-compliance claims brought by Mr. Smith in prior cases, such as avoiding becoming a target for other litigants. And Mr. Smith clamis that he would have to notify each defendant separately before disclosure, a very burdensome process.[4] This process has obvious inefficiencies that will delay resolution of this case, and require the expenditure of significant resources by the Plaintiff. The Court finds that the burden and expense associated with production of confidential settlement agreements outweighs their benefit to resolving the issues in this case. Accordingly, the Court finds that production of confidential settlement agreements is not required by this Order. The Defendants' motion to compel is denied in this respect.

The same proportionality concerns are not present with respect to any non-confidential settlement agreements, which must be disclosed. The Court also finds that there is no significant burden for Mr. Smith to produce documents that reflect the total compensation he has received in settled ADA litigation within the two-year period preceding the October 30, 2018 hearing on the Defendants' motion.[5] This information is within Mr. Smith's possession, custody, or control and he has presented no reason why it could not easily be produced.

---

[4] Defendants argue that the form agreement Mr. Smith uses does not include an express provision requiring Mr. Smith to provide pre-disclosure notice to a defendant if he is required by a court order to produce the agreements. However, even if some of the confidential agreements lack such language, the Court finds that the interests of outside parties would be best protected by such a practice, and the Court would adopt that notice obligation if it were to order disclosure.

[5] At the hearing, Mr. Smith argued that the Defendants failed to submit any document request seeking such information, but the Court disagrees. Defendants specifically asked the Plaintiff to produce "each settlement agreement, *and any documents related to settlement* or the compliance or breach thereof" for Mr. Smith's prior litigation. (ECF No. 148-1 at 6.)

Consistent with the foregoing, the Defendants' motion is granted in part as follows. Mr. Smith must disclose any non-confidential settlement agreements he has entered in prior ADA cases during the two-year period preceding the October 30, 2018 hearing. Confidential settlement agreements need not be produced. Further, Mr. Smith is required to produce documents showing the total compensation he has received from settlements in prior ADA cases over the same two-year period. Finally, the Court finds that both sides' positions on this issue were substantially justified, so no award of expenses is appropriate with respect to this issue.

### B. Refund of Expenses Paid to Plaintiff's Expert

Defendants seek an order compelling plaintiff to refund the expert-witness fees they were required to pre-pay for the deposition of Mr. Smith's purported expert, Peter Hansmeier. For the reasons set forth below, the Court agrees with the Defendants' position on this matter and grants the motion.

The Federal Rules of Civil Procedure shift certain discovery-related expenses for experts. In relevant part, Rule 26 provides that "[u]nless manifest justice would result, the court must require that the party seeking discovery: (1) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(f)(A)," which concerns the deposition of another party's expert. Fed. R. Civ. P. 26(b)(4)(E).[6]

Courts consider several non-exclusive factors in determining whether a fee is reasonable under the rule, including:

> (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographical area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters.

---

[6] Current Rule 26(b)(4)(E) is substantially similar to former Rule 26(b)(4)(C).

10

*Broushet v. Target Corp.*, 274 F.R.D. 432, 433 (E.D.N.Y. 2011) (quoting *Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N.Y. 1997) (internal citations omitted)). "The party seeking to be reimbursed bears the burden to of demonstrating that the fee is reasonable." *Id.* (citing *New York v. Solvent Chem. Co.*, 210 F.R.D. 23, 24–25 (W.D.N.Y. 2002)).[7]

The Defendants raise two arguments in support of their demand. First, they argue that they should receive a refund because Mr. Hansmeier is not a qualified expert, but simply a paralegal. The Defendants point to prior concerns raised by other judges of this Court regarding Mr. Hansmeier's qualifications. *See Smith v. Bradley Pizza*, 314 F. Supp. 3d 1017, 1024 (D. Minn. 2018) (noting that Mr. Hansmeier's statement in response to a motion to dismiss on mootness grounds was presented "without any credentials or other indicia of expertise that qualify Hansmeier to make accessibility determinations"); (Def.'s Mem. in Supp. of Mot. to Compel at 9–10 (arguing that Judge Michael Davis found Mr. Hansmeier lacked sufficient expertise to be permitted to perform a site inspection).) The Court is not persuaded by this argument at this stage: it would be premature to opine on Mr. Hansmeier's qualifications in the context of a motion to compel. A decision regarding an expert's qualifications is an evidentiary matter typically left to the trial judge pursuant to Federal Rule of Evidence 702. Therefore, this Court will not weigh in on the issue of Mr. Hansmeier's qualifications at this stage of the litigation. *Cf. New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 470 (W.D.N.Y. 2002) (rejecting argument that a fee was unreasonable because the expert witness "lacks knowledge on the issue at hand").

---

[7] The Court observes that plaintiff's counsel refused to allow Mr. Hansmeier to be deposed without prepayment of a fee pursuant to Rule 26(b)(4)(E). (Sheu Decl., Ex. H, ECF No. 148-8.) Such a demand was unnecessary and the deposition could have gone forward with a payment request to come later, as is common in civil litigation. Indeed, pre-payment of fees pursuant to Rule 26(b)(4)(E) is not required unless the parties have agreed to advance payment and a party may seek reimbursement of such fees after trial. *See Harris v. Costco Wholesale Corp.*, 226 F.R.D. 675, 676–77 (S.D. Cal. 2005) (finding that a plaintiff's counsel should not have terminated deposition of an expert for failure to pay witness fees in advance). Such a demand for prepayment is indicative of the antipathy that has plagued nearly every step of this litigation.

The real focus of the parties' dispute, however, is whether Mr. Hansmeier is entitled to payment pursuant to Rule 26(b)(4)(E) based on his employment arrangement with plaintiff's counsel's law firm. Having closely reviewed the record provided by the parties, the Court concludes that Mr. Hansmeier is not entitled to payment by the Defendants for his deposition.

Plaintiff's counsel, Padraigin Browne, states that her firm charges Mr. Smith $200 per hour for Mr. Hansmeier's expert services. (Browne Decl. ¶ 9, ECF No. 151.) Mr. Hansmeier's own "Statement of Compensation" says that his work "is billed to [Browne Law LLC's] clients at $200/hr." (Hansmeier Statement of Compensation, ECF No. 148-7.) However, Mr. Smith testified that he has not paid anything up front for legal fees and costs. (Smith Dep. at 25:14–16 ("Q. Okay. But you don't advance any money to Ms. Browne?/A. No."), ECF No. 148-3.) More importantly, there is no evidence before the Court that Mr. Hansmeier actually required Ms. Browne's firm or Mr. Smith to pay him anything in addition to his ordinary monthly paralegal salary. Instead, Mr. Hansmeier testified that he receives a monthly salary that does not change regardless of what is happening in a case. (Hansmeier Dep. at 27:5–20, ECF No. 148-6.) He also agreed that he requested compensation for his deposition, but this request was not "above and beyond what [he is] being paid for anyway as an employee…." (*Id.* at 27:21–24.)

The clear import of Mr. Smith's and Mr. Hansmeier's testimony is that neither Mr. Smith nor Ms. Browne's law firm have incurred any additional expenses in connection with Hansmeier's deposition. Even if Ms. Browne's firm and Mr. Smith have an arrangement in which the amounts payable to Mr. Smith from any financial settlement are ultimately reduced by expenses incurred in prosecuting the litigation, Mr. Hansmeier's services did not cause Ms. Browne's firm to incur any actual expenses. This case is plainly different from the common arrangement where a law firm fronts the money to retain an expert witness and agrees with the client that the firm will later be reimbursed from the proceeds of any favorable financial outcome. Here there is no evidence that either the plaintiff or the plaintiff's law firm would ever be on the hook for any payment to Mr. Hansmeier. In other words, any "charges" to Mr. Smith for Mr. Hansmeier's expert services are essentially illusory. Therefore, the Court finds that it is not reasonable for Mr. Smith to have demanded that Mr. Hansmeier's "expenses" be pre-paid for his deposition.

The Court's decision here finds substantial support in the policy behind the cost-shifting provided for in Rule 26(b)(4)(E). The current version of the Rule requiring a party that takes the deposition of another party's retained expert to pay that expert's fees has its roots in the 1993 amendments to the Federal Rules of Civil Procedure. The advisory committee for the 1993 amendments noted that Rule 26(b) was changed to explicitly authorize the deposition of an opponent's expert to conform the Rule to standard practice. By making expert depositions the norm, the committee acknowledged that expert costs for a party would increase because that party's opponent would ordinarily take the expert's deposition. In discussing this, the committee notes state:

> [Rule 26(b)(4)(A)] is revised to provide that experts who are expected to be witnesses will be subject to deposition prior to trial, conforming the norm stated in the rule to the actual practice followed in most courts, in which depositions of experts have become standard. Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition.

Rule 26(b), advisory committee notes for 1993 amendments. As acknowledged by other courts, "[t]he purpose of the rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 494 (S.D. Iowa 1992) (internal quotation marks omitted).

Here, there is no expense incurred by Mr. Smith or Ms. Browne's firm that needs to be reimbursed. In a situation where the expert's time in the deposition costs the party nothing, payment of expenses under the rule is not required. *Cf. Krepps v. NIIT (USA), Inc.*, 297 F.R.D. 579, 581 (N.D. Ill. 2013) (denying the plaintiff's motion for reimbursement of expert-witness fees where plaintiff was a practicing economist, identified himself as his own expert witness, and claimed to be owed fees under the rule despite having paid nothing for his own expert-witness services). Mr. Hansmeier testified that he receives nothing other than his ordinary salary, and there is no evidence that he actually charges the plaintiff or Ms. Browne's firm anything extra for his expert-witness services. Under these circumstances, requiring the Defendants to pay Mr. Hansmeier would simply turn Rule 26(b)(4)(E) into a means of generating revenue. *Krepps*, 297 F.R.D. at 581 (rejecting the plaintiff's interpretation that he was entitled to payment of expert witness fees even though he incurred no costs and there

was nothing to be reimbursed and concluding that interpreting the rule to require payment of expenses under those circumstances would result in "manifest injustice" under the rule).

For these reasons, the Defendants' motion to compel a refund of the expenses pre-paid for Mr. Hansmeier's deposition is granted. Within 14 days of the date of this Order, Mr. Smith shall reimburse the Defendants.

### C. Payment of Defendants' Expert

Finally, the Defendants seek an Order compelling Mr. Smith to pay the reasonable deposition expenses incurred by their expert witness, Julee Quarve-Peterson. Ms. Quarve-Peterson's company, JQP, Inc., sent an invoice for her time associated with the deposition in this matter. (JQP, Inc. Invoice, ECF No. 148-5.) Mr. Smith's counsel also deposed Ms. Quarve-Peterson in two similar ADA cases brought against other restaurants in Red Wing, MN. (*Id.* (noting that the Sept. 26, 2018 depositions were for this case and other cases involving Golden China and Bierstube).) The deposition lasted a total of 6.25 hours for which Ms. Quarve-Peterson charged $250 per hour ($1,562.50). (*Id.*) She also charged $250 per hour for 2.25 hours of preparation and review time ($562.50), and $135 per hour for one hour of travel time ($135.00). (*Id.*) Mr. Smith paid only $780 on September 26, 2018, which represents a rate of $125 per hour for the 6.25 hours of deposition testimony Ms. Quarve-Peterson provided. (*Id.*) Defendants argue that Mr. Smith should be required to compensate Ms. Quarve-Peterson for the remaining time she spent related to the deposition.

The first question before the Court is whether Ms. Quarve-Peterson is entitled to compensation for time she spent preparing for the deposition. Courts have reached mixed conclusions in deciding whether an expert is entitled to compensation for such preparation under Rule 26(b)(4)(E). The majority view appears to be that preparation time is a reasonable expense that is compensable under the rule. *Compare Waters v. City of Chicago*, 526 F. Supp. 2d 899, 900 (N.D. Ill. 2007) (noting that the authority is not uniform and citing 8 Charles A. Wright & Arthur R. Miller, *et al.*, *Federal Practice & Procedure: Civil 2d* § 2034 (2d ed. 1994), and *Moore's Federal Practice* § 26.80[3] (3d ed. 2007)) *and Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 852 (7th Cir. 2012) (affirming district court's award of reimbursement for deposition preparation), *with Rock River Commc'ns Inc. v. Universal Music Gr.*, 276 F.R.D. 63, 636 (C.D. Cal. 2011) (declining to

14

reimburse preparation time). Here, Defendants' counsel acknowledged at the hearing that, in his experience, expert preparation time for a deposition is not usually paid for by the party taking the deposition. Based on that representation, the Court finds that compensation for preparation time in this case would not be reasonable. Mr. Smith is therefore not required to pay for the 2.25 hours spent by Ms. Quarve-Peterson in preparing for her deposition.

The second issue is Ms. Quarve-Peterson's rate itself. Mr. Smith contends that Ms. Quarve-Peteron's $250 per hour rate for testifying at a deposition is not reasonable and conflicts with the rate she charges her clients for additional work beyond a response report associated with an initial complaint. (Pl.'s Opp'n at 9.) He cites to Ms. Quarve-Peterson's November 7, 2017 declaration filed in support of the Defendants' motion to dismiss in this case in which she states that she charges $500 for "reviewing and responding to allegations in a civil complaint and preparing a report," and $125 per hour for "additional work beyond the initial complaint response." (Quarve-Peterson Decl. ¶ 3, ECF No. 35.) However, JQP, Inc.'s rate sheet for the 2018 calendar year reflects a $250 per hour rate for depositions and other testimony in ADA lawsuits, which is the rate the business invoiced to Ms. Browne's law firm. (JQP, Inc. Invoice at 2.) Mr. Smith essentially contends that a $250 per hour rate is unreasonable when Ms. Quarve-Peterson charges less for other tasks she completes for clients who retain her.

The Court finds that the $250 per hour rate Ms. Quarve-Peterson charges for depositions is reasonable. Contrary to Mr. Smith's contention that he is being gouged for a higher rate than is being charged to the Defendants, JQP, Inc.'s rate sheet reflects that the business charges the same rate for Ms. Quarve-Peterson's time at a deposition in an ADA case (which is charged to opponents of the litigants who retain her) as for her time testifying at a trial (which is charged to the party that retains her). The fact that JQP, Inc.'s rates are the same when testimony in an ADA suit is involved regardless of who is footing the bill is indicative of the reasonableness of the fee. A higher rate for time spent testifying in a court proceeding than for time reviewing records or preparing a report reasonably reflects the greater demands testimony places on an expert witness, particularly in a case such as this where her time preparing to testify is not compensated. Mr. Smith provides no basis for this Court to conclude that the $250 per hour rate is reasonable. *Cf. Maasen v. Zwibelman*, 2001 WL 309116, at \*1 (D. Kan. Mar. 12, 2001) (concluding that it was reasonable for

a plaintiff's expert to charge a higher rate for deposition preparation time than for time spent reviewing records). Moreover, the Court finds that $250 per hour itself is not, on its face, an unreasonable rate for an expert witness.

Mr. Smith also argues that he should not be required to pay JQP, Inc. $135 for Ms. Quarve-Peterson's one hour of travel time if Defendants are not similarly billed for travel time. He cites an invoice submitted in support of the Defendants' motion to dismiss which does not include an hourly rate for travel time, but only charges for mileage at a federal rate. (Pl.'s Letter at 10 (citing ECF No. 38).) Although courts have generally found that an expert's travel time is compensable under the applicable rule, *see, e.g., Magee*, 172 F.R.D. at 646 ("Travel time has been held compensable."), here, the Court concludes that the Defendants—the party seeking reimbursement—have failed to meet their burden to demonstrate that this $135 charge is reasonable. The evidence submitted by the Defendants fails to show that the travel time rate is routinely charged by JQP, Inc. Indeed, the rate sheet attached to the invoice for Ms. Quarve-Peterson's deposition does not include any $135-per-hour line item for "travel time" associated with ADA cases. The only entry on the rate sheet that plainly relates to travel is an expense item for "mileage," which is billed "at standard rates." (JQP, Inc. Invoice at 2.) And the invoice cited by Mr. Smith certainly appears to reflect that JQP, Inc. did not bill the Defendants for travel time associated with the site inspections that preceded the Defendants' motion to dismiss. (ECF No. 38.) For these reasons, the Court will not require Mr. Smith to pay the $135 fee for Ms. Quarve-Peterson's travel time.

Finally, Mr. Smith contends that there is an "intractable" problem created by the fact that Ms. Quarve-Peterson's invoice is divided between three separate cases, and he should not be required by any order resolving the Defendants' current motion to compel in this case to pay for portions of the deposition that are attributable to other matters. (Pl.'s Opp'n at 12.) Given the Court's findings in this Order that Ms. Quarve-Peterson's $250 per hour rate is reasonable, that Mr. Smith should not be required to pay for Ms. Quarve-Peterson's preparation time, and that the Defendants failed to meet their burden to show that a fee for travel time is reasonable, there is an easy solution to this problem. Ms. Quarve-Peterson was deposed for 6.25 hours, and at a reasonable rate of $250 per hour for that deposition time, she should be paid a total of $1,562.50. Split evenly between three cases (all of which involve the same counsel on both sides), the relevant portion for each case is approximately $520.83.

Ms. Quarve-Peterson has already been paid $780, representing approximately $260 per case. The difference between the amount already paid that is attributable to this case ($260) and the relevant portion of the overall reasonable fee attributable to this case ($520.83) is $260.83. Accordingly, Mr. Smith is required to pay JQP, Inc. an additional $260.83 for the reasonable expert fees attributable to this case.[8]

### D. Award of Expenses

Here, the Defendants' motion is granted in part and denied in part. Rule 37(a)(5)(C) allows for apportionment of expenses where a court issues such a ruling on a motion to compel. Both parties' positions with respect to discovery of prior settlement agreements and the compensation Mr. Smith has received were substantially justified, so the Court will not apportion the reasonable expenses for the motion with respect to that issue. The Court also finds that the parties' positions were substantially justified on issue of the fees paid for Mr. Hansmeier's deposition, so no apportionment of fees is appropriate for that part of the Defendants' motion. With respect to payment of Ms. Quarve-Peterson's expert-witness fees, the Court finds that Mr. Smith's refusal to pay her full hourly rate was not substantially justified, and the Defendants are entitled to a payment of the reasonable expenses incurred in bringing the motion to compel on that issue. However, the Court declines to apportion the reasonable expenses incurred by either side with respect to the Defendants' motion seeking reimbursement of Ms. Quarve-Peterson's time spent preparing for her deposition and for travel time.

---

[8] In litigation where the parties behaved rationally, they would read the writing on the wall and similarly resolve any lingering disputes with respect to Ms. Quarve-Peterson's bill for the other two cases. Plaintiff would agree to pay the remaining portion of the $782.50 outstanding balance for Ms. Quarve-Peterson's time spent during the deposition that is attributable to the other two cases, and the Defendants would agree to forego payment of deposition-preparation expenses and compensation for travel time. The Court hopes that the parties are able to reach such an agreement so that they do not burden the judges involved in the other two cases with additional motion practice like that involved here. Of course, the parties have proven themselves capable of reaching so few reasonable solutions on their own in this case that such hopes seem naively optimistic.

## III. ORDER

For the reasons stated above, the Court enters the following Order.

1. Plaintiff's Motion to Compel Discovery (ECF No. 138) is **DENIED**.

    a. Ms. Dahl is not required to sign initial interrogatory answers that have been superseded.

    b. Ms. Dahl is not required by this Order to produce financial information because Plaintiff brought the motion before her discovery responses were due.

    c. Bradley Pizza is not required to produce financial information because it is irrelevant.

2. Within 14 days of the date of this Order, the Defendants must file a short letter memorandum (not to exceed 5 pages) and any affidavits, declarations, and exhibits to establish the expenses and fees incurred in responding to Plaintiff's motion to compel. These submissions should not include a request for reimbursement of the fees and expenses reasonably attributable to the request for Bradley Pizza's financial information. Within 7 days after the Defendants' filing, Plaintiff may file a written response.

3. Defendants' Motion to Compel (ECF No. 144) is **GRANTED IN PART** and **DENIED IN PART**.

    a. Plaintiff is required to produce any non-confidential settlement agreements that he has entered in similar ADA lawsuits in the two-year period preceding October 30, 2018.

    b. Plaintiff is not required to provide confidential settlement agreements for this same two-year period.

    c. Plaintiff is required to produce documents sufficient to show the total compensation he has received from settling ADA lawsuits in the two-year period preceding October 30, 2018.

    d. Plaintiff is required refund the amounts pre-paid for the deposition of Peter Hansmeier because he is not entitled to payment of expenses under Rule 26(b)(4)(E) under the circumstances of this case.

    e. Plaintiff is required to pay JQP, Inc. an additional $260.83 for the reasonable expert fees attributable to Ms. Quarve-Peterson's time spent

in connection with her deposition in this case. Plaintiff is not required to pay for Ms. Quarve-Peterson's time spent preparing for the deposition or her travel time.

f. The Court declines to apportion expenses for all but one issue raised in the Defendants' motion pursuant to Fed. R. Civ. P. 37(a)(5)(C). No award of expenses is appropriate with respect to the following issues: (1) production of settlement agreements in prior ADA litigation by the plaintiff; (2) production of documents showing Mr. Smith's income from prior ADA cases; (3) payment of Ms. Quarve-Peterson's deposition-preparation time; and (4) payment of Ms. Quarve-Peterson's travel time. However, the Defendants are entitled to payment of the reasonable expenses incurred in seeking payment of Ms. Quarve-Peterson's full $250 hourly rate for time spent during the deposition. When the Defendants file the letter memorandum discussed in Paragraph 2 of this Order, they may include a request for reimbursement of the fees and expenses reasonably attributable to that issue.

**IT IS SO ORDERED**.

Date: November 13, 2018

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge