UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Smith,　　　　　　　　　　　　　　　Case No. 0:17-cv-2032-ECT-KMM

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　**ORDER**

Bradley Pizza, Inc., and Pamela M. Dahl,

　　　　　　Defendants.

　　　This matter is before the Court on Plaintiff Scott Smith's Motion to Enforce the Court's Protective Order and For Sanctions Against Defendants and Best & Flanagan LLP for Violations of the Parties' Agreed Protective Order. [Pl.'s Mot., ECF No. 196.] Specifically, Mr. Smith asserts that defense counsel[1] violated the terms of the Protective Order [ECF No. 123] by filing "confidential" documents produced in this case in support of motions for summary judgment in two other cases pending in the District of Minnesota. The documents at issue are settlement agreements that this Court required Mr. Smith to produce to Bradley Pizza and Ms. Dahl in this litigation and information regarding the income he receives from ADA litigation. Mr. Smith is the plaintiff in the other two cases and defense counsel represents the defendants in both.

　　　Mr. Smith argues that defense counsel's violations of the Protective Order should result in the following sanctions: (1) defense counsel should reimburse him for the legal fees and costs incurred in addressing the violations of the protective order;

---

[1]　　Mr. Smith's motion and proposed order ask the Court to impose sanctions on defense counsel and the defendants in this case, Bradley Pizza, Inc., and Pamela Dahl. However, none of Mr. Smith's moving papers suggest that the defendants themselves are responsible for the alleged failure to comply with the protective order. Rather, Mr. Smith focuses the attention on defense counsel's conduct. Accordingly, the Court finds that neither Bradley Pizza nor Ms. Dahl are responsible for any of the alleged violations of the protective order.

(2) defense counsel should be required to revise the summary-judgment motions in the other cases to remove references to the settlement-agreement information; (3) defense counsel should be ordered to cease distributing the settlement-agreement information to their other clients and to ensure that any copies are destroyed; and (4) defense counsel should be required to pay a $20,000 penalty to the Court.

For the reasons that follow, the Court finds that the filing of the settlement agreements and related information in the other litigation violated the Protective Order. However, most of the sanctions Mr. Smith requests are inappropriate given the history and circumstances of this litigation. The Court requires defense counsel to pay a penalty of $500 for failure to comply with the Protective Order. Moreover, the Court modifies the Protective Order to allow the continued use of the settlement-agreement information in the other two cases at issue.

## I. Relevant Background

Based on a stipulation filed by the parties, the Court entered a Protective Order on July 9, 2018. [ECF No. 123.] Under the Protective Order, each party in this case has the right to designate documents produced during discovery as "confidential." [*Id.* ¶ 2(a).] A party can agree to remove a confidential designation from a document, but if no such agreement can be obtained, a party "may move the court for an order changing the designation." [*Id.* ¶¶ 7(a), 7(c).] A document that has been marked confidential "may be used only in this action." [*Id.* ¶ 3(a).] The Protective Order also limits the people to whom a confidential document may be revealed. [*Id.* ¶ 3(b).]

Almost a month after the Protective Order was entered, on August 7, 2018, counsel for Bradley Pizza and Ms. Dahl asked the Court to allow them to take Mr. Smith's deposition in this case simultaneously with his deposition in two other cases: *Smith v. R.W.'s Bierstube, Inc.* ("*Bierstube*"), No. 17cv1866 (PJS/HB), Doc. No. 1 (D. Minn. June 2, 2017) (Compl.), and *Smith v. Golden China* ("*Golden China*"), No. 17cv1862 (JRT/HB), Doc. No. 1 (D. Minn. June 2, 2017) (Compl.).[2] In *Bierstube*

---

[2] Email from Edward P. Sheu to Menendez, M.J. (Aug. 7, 2018, 02:24 CST) (on file with the Court) ("Sorry there is one additional issue that is not resolved: whether Mr. Smith can be asked at his deposition about the other 2 Red Wing cases (Mr. Smith sued 13 Red Wing/Winona businesses based on the same May 25, 2017

(*footnote continued on following page*)

2

and *Golden China*, Mr. Smith alleges that he encountered architectural barriers to access prohibited by the ADA in the parking lots of the defendants' businesses on the same day (May 25, 2017) that he encountered barriers to access at Bradley Pizza. Defense counsel in this case also represents the defendants in *Bierstube* and *Golden China*. The Court held a telephonic conference on August 8, 2018 to discuss Mr. Smith's deposition, among several other discovery issues raised by the parties. [Mins. of Tel. Conf. (Aug. 8, 2018), ECF No. 128.] On September 20, 2018, the Court amended the Pretrial Scheduling Order here based on the parties' subsequent agreement that Mr. Smith's deposition would cover testimony for this matter, *Golden China*, and *Bierstube*.

The parties also coordinated other aspects of pretrial procedure and discovery among the three cases. In addition to having a single deposition of Mr. Smith, they also agreed that each side's expert depositions would be consolidated for all three cases. Additionally, site inspections for Bradley Pizza's location and for the defendants' businesses in *Golden China* and *Bierstube* were conducted jointly. [Jan. 7, 2019 Sheu Decl. ("1/7 Sheu Decl.") ¶ 5, Ex. 2, ECF Nos. 204, 204-2.] And the defendants in all three cases sought to conduct a joint inspection at the apartment building where Mr. Smith lives. [*See* 1/7 Sheu Decl., Ex. 3.]

On September 17, 2018, defense counsel took Mr. Smith's deposition for this case, *Golden China*, and *Bierstube*. During the deposition, defense counsel asked Mr. Smith questions about settlement agreements he has reached in other ADA cases he filed as a plaintiff. Mr. Smith testified that he has received money through some of those settlements. On September 27, 2018, defense counsel sent Mr. Smith's counsel a letter regarding all three cases, noting that Mr. Smith, plaintiff's counsel, and plaintiff's expert "refused to provide information about Mr. Smith's settlements." [1/7 Sheu Decl., Ex. 5.] In response, on October 12, 2018, plaintiff's counsel sent defense counsel an email, again in reference to all three cases, attaching a settlement agreement template. [1/7 Sheu Decl., Ex. 6.]

---

(*footnote continued from previous page*)

visit). Defendants wish to depose Mr. Smith once rather than 3 times, the same way [the parties' experts] are going to be; plaintiff says otherwise.").

Bradley Pizza and Ms. Dahl also served a request for production of documents related to Mr. Smith's past ADA settlements, but Mr. Smith did not agree to produce those documents.[3] [Oct. 13, 2018 Sheu Decl. ("10/13 Sheu Decl.") ¶ 2, Ex. A, ECF Nos. 148, 148-1.] Mr. Smith raised several objections to the request, and Bradley Pizza and Ms. Dahl moved to compel production of the settlement agreements. [10/13 Sheu Decl. ¶ 3, Ex. B (Pl.'s Response); Defs.' Mot. to Compel, ECF No. 144.] In an Order dated November 13, 2018, the undersigned granted in part and denied in part Bradley Pizza's and Ms. Dahl's motion to compel production of settlement agreements. [Order (Nov. 13, 2018), ECF No. 159.] The Order required Mr. Smith "to produce any non-confidential settlement agreements that he has entered in similar ADA lawsuits in the two-year period preceding October 30, 2018." [*Id.* at 18, ¶ 3a.] He was also required "to produce documents sufficient to show the total compensation he has received from settling ADA lawsuits in the two-year period preceding October 30, 2018." [*Id.* at 18 ¶ 3c.] Mr. Smith was not required to produce settlement agreements that included a confidentiality provision. [*Id.* at 18 ¶ 3b.]

To comply with the November 13, 2018 Order, Mr. Smith produced eleven settlement agreements that were not subject to a confidentiality provision. When he produced these documents, Mr. Smith marked them as "confidential" pursuant to the Protective Order. [*See* Pl.'s Mem. at 3, ECF No. 198.] On Friday, December 14, 2018, the defendants in *Golden China* filed a motion for summary judgment. [*Golden China*, 17cv1862, ECF No. 89.] In support of the *Golden China* summary-judgment motion, defense counsel filed Sealed Exhibit 14, which includes the eleven settlement agreements provided pursuant to the undersigned's November 13, 2018 Order in this case. [*Golden China*, 17cv1862, ECF Nos. 91, 94.] In their memorandum, the *Golden China* defendants also referenced these settlement agreements and information about the compensation Mr. Smith has received from ADA lawsuits. [*Golden China*, 17cv1682, ECF No. 99 at 2 n.1.]

On the following Monday, December 17, 2018, plaintiff's counsel contacted defense counsel and asserted that the filing of the settlement agreements in the *Golden*

---

[3] The document request for the settlement agreements baers the caption for this action, with no reference made to the *Golden China* or *Bierstube* matters. [10/13 Sheu Decl., Ex. A, ECF No. 148-1.]

4

*China* case violated the Protective Order in this action. [Dec. 29, 2018 Browne Decl. ("12/29 Browne Decl.") ¶ 5, ECF No. 200.] Specifically, Mr. Smith asserted that defense counsel violated the Protective Order by disclosing the settlement-agreement information that was marked confidential to the defendants in *Golden China*, who were not among those authorized to receive such information. [12/29 Browne Decl., Ex. A (email string).] Defense counsel took the position that no violation had occurred because: (1) "Plaintiff waived objections about sharing his responses among discovery requests in [this case, *Golden China*, and *Bierstube*]"; and (2) the coordination of pretrial matters among the three cases operated as a "de facto modification of the protective orders, if not an actual agreement on the commonality of all plaintiff's discovery responses and documents." [*Id.*] The parties were unable to resolve their disagreement about the propriety of defense counsel's use of the information in the other two cases.

On December 29, 2018, Mr. Smith filed the pending motion to enforce the Protective Order and for sanctions against defense counsel for using the settlement agreements in *Golden China*. [Pl.'s Mot., ECF No. 196.] In his supporting memorandum, Mr. Smith noted:

> Defendants' counsel has another summary judgment motion due in the near future in [*Bierstube*]. Smith is concerned that Defendants and Best & Flanagan will continue to violate the protective order by sharing Smith's confidential documents and information with Best & Flanagan's other clients, thus allowing the use of confidential information in other proceedings.

[Pl.'s Mem. at 2.] Three days later, the defendants in *Bierstube* filed a motion for summary judgment.[4] [*Bierstube*, 17cv1866, ECF No. 96.] The *Bierstube* motion also relies upon the settlement agreements that were produced pursuant to the undersigned's November 13, 2018 Order on the motions to compel. [*Bierstube*, 17cv1866, ECF No. 98 at 2 n.2, and ECF No. 104.]

The undersigned held a hearing on the motion to enforce the Protective Order on January 24, 2019. [ECF No. 217.] Five days after the hearing, on January 29, 2019, Mr. Smith filed a Notice, asserting that in *Golden China*, defense counsel again referred

---

[4]   The deadline for having dispositive motions served, filed and heard in *Bierstube* is March 1, 2019. [*Bierstube*, 17cv1866, ECF No. 77 at 9.]

to the settlement information in their own clients' summary-judgment reply and their response to Mr. Smith's summary-judgment motion. [ECF No. 218.]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 37(b), a court may sanction a party that violates a discovery order, including a protective order. *Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007). When a party fails to abide by a protective order, the court may impose any sanction available under Rule 37(b)(2)(A)(i)–(vii) and "issue further just orders." *U.S. ex rel. Johnson v. Golden Gate Nat'l Sr. Care, LLC*, No. 08-cv-1194 (DWF/JJK), 2013 WL 1182095, at *7 (D. Minn. Mar. 21, 2013). A court may also sanction a party for violating a protective order under its inherent power when the violation is willful. *Id.*

## III. Analysis

There is no dispute in this case that defense counsel used the settlement agreements Smith was ordered to produce in this case in other litigation. Nor is there any dispute that the defendants in *Golden China* and *Bierstube* received the settlement-agreement information. However, the parties dispute whether the use in the other cases violated the Protective Order and whether any sanctions are warranted. The Court finds that defense counsel's use of the settlement information in *Golden China* and *Bierstube* constituted a failure to comply with the Protective Order's explicit provision limiting the use of documents marked confidential to this case. Defense counsel's initial use of the information in *Golden China* was largely defensible under the circumstances, but their use of the settlement agreements in *Bierstube* is more problematic. Accordingly, the Court imposes a sanction on defense counsel for their use of the information in *Bierstube*. However, Mr. Smith has failed to demonstrate that he has suffered any prejudice from either violation, so the Court declines to impose the majority of the sanctions he requested. [ECF No. 201.]

### A. The Initial *Golden China* Filing

The record in this case provides some support for the straightforward story that Mr. Smith tells in support of his motion for sanctions. The Protective Order explicitly provides that a party can only use a document that is marked as confidential in this action and that disclosure of the information is limited to certain people associated with this proceeding. Mr. Smith marked the settlement agreements

6

confidential.[5] Defense counsel never asked the Court to modify the Protective Order to permit use of settlement information in *Golden China* or *Bierstube*, and Mr. Smith did not stipulate to the use of the information he was ordered to produce in any other case. Moreover, the Protective Order establishes a procedure by which the defendants or defense counsel could have challenged any confidentiality designations, but they never invoked that procedure. Because the Protective Order was not modified and the confidentiality designations were not challenged, Mr. Smith contends that defense counsel's use of the settlement agreement in *Golden China* and *Bierstube* violated the Protective Order.

Though the description of events in Mr. Smith's argument is not inaccurate, it is incomplete. The undersigned's management of pretrial matters in this case has substantially overlapped with Magistrate Judge Hildy Bowbeer's management of *Golden China* and *Bierstube*. In addition, the parties themselves have coordinated several aspects of discovery among the three cases, including Mr. Smith's deposition. During that deposition, Mr. Smith testified generally regarding his settlement of the many other ADA cases he has filed over the years. He did not treat any portion of the deposition transcript as confidential, nor specify that any of his answers could be used in one case and not others. Moreover, counsel for both sides have exchanged correspondence bearing the case numbers for this case, *Golden China*, and *Bierstube* in the subject headings. Perhaps most notably, when defense counsel sought production of Mr. Smith's settlement agreements from prior ADA cases, Mr. Smith's counsel

---

[5] At the hearing on the motion for sanctions, defense counsel stated that they are not challenging the propriety of the confidentiality designations, but also suggested that sanctions are inappropriate because plaintiff failed to properly mark the documents as confidential. Plaintiff's cover letter producing the settlement agreements indicated the documents are confidential, but the documents themselves were not individually marked as required by the Protective Order. [ECF No. 123 ¶ 2(b) ("A party ... may designate a document as confidential by conspicuously marking each page with the word 'confidential.'").] This argument is unpersuasive. The purpose of the Protective Order's requirement that each page of a document gets marked confidential is so that the parties are not confused as to the extent of a confidentiality designation. There was no confusion here. When they filed the documents in *Golden China* and *Bierstube*, defense counsel treated the documents as though they had been properly marked confidential.

7

emailed a settlement agreement template bearing the caption for all three cases. Against this backdrop, it was not unreasonable for defense counsel to believe that discovery had been jointly coordinated among the three cases and their use of the settlement information in *Golden China* was permitted. Specifically, at the time of the initial *Golden China* filing, the record suggests that the parties may have had at least an implicit agreement that the settlement-agreement information could be used in all three cases. Defense counsel's belief that there had been a "de facto modification" of the Protective Order was not unreasonable at the outset. [*See* Defs.' Mem. at 8.]

However, the Court finds that there had, in fact, been no modification, de facto or otherwise, of the Protective Order as defense counsel suggests. First, there is no question the Protective Order was never modified by the Court. Only the judges assigned to this case have the authority to modify the Protective Order, and neither the undersigned nor District Judge Eric Tostrud has done that here. The Court's discussion with the parties surrounding coordinating discovery for purposes of the depositions did not specifically address the propriety of using confidential documents across all three cases. The undersigned became involved in coordinating Mr. Smith's deposition and the depositions of two expert witnesses to assist the parties in efficiently completing that aspect of discovery. To the extent defense counsel assumed that this coordination operated as a modification of the Protective Order, they bear the risk that such an assumption was wrong. Because the Court never weighed in on the issue presented here, the Court finds that the use of the information in *Golden China* was not in compliance with the Protective Order.[6]

---

[6] Defense counsel also argues that no violation of the Protective Order occurred because "parties in collateral litigation are entitled to obtain discovery protected by a confidentiality designation to avoid duplicative discovery." [Defs.' Mem. at 11.] In support of this proposition, they cite *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349 (9th Cir. 2013), and *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), but neither decision validates their conduct in this case. In *Foltz*, the district court denied the request of several non-parties who were involved in collateral litigation to modify a protective order so they could access discovery, and the Ninth Circuit remanded for reconsideration given the similarity of the issues in both cases. 331 F.3d at 1128–299, 1133–34. In *Blum*, the court affirmed a decision to modify a protective order in earlier litigation to allow use of a deposition in a

(*footnote continued on following page*)

Second, even if defense counsel originally believed the parties had agreed to a de facto modification, and despite the objective reasonableness of that belief, they were quickly put on notice that no such agreement existed. Shortly after defense counsel's initial use of the information in *Golden China*, plaintiff's counsel notified them that Mr. Smith objected to the use of the settlement agreements in other cases. At that point, defense counsel could not reasonably continue to believe that there was a mutual understanding that the settlement agreements could be used in all three cases. The correspondence following the *Golden China* filing clearly shows that the parties disagreed on that issue. Mr. Smith then filed his motion to enforce the protective order and seeking sanctions, further crystallizing the extent of that disagreement and specifically noting the concern that the defendants in *Bierstube* would use the same settlement agreements in that case. Defense counsel was now on notice that, whatever their initial belief may have been, no de facto modification of the Protective Order had in fact occurred by agreement of the parties.

Nevertheless, imposition of a sanction for defense counsel's contravention of the Protective Order in the initial *Golden China* filing would be inappropriate for two reasons. First, as explored, defense counsel's belief that the Protective Order had been modified by joint agreement was reasonable, if wrong. Though there was no actual meeting of the minds about the use of discovery in all three cases at the time of the initial *Golden China* filing, that reality had not yet been clarified. It would serve little purpose for the Court to impose a financial or other penalty because defense counsel had a reasonable misunderstanding about the implications of the coordinated discovery when it made that initial filing.

Second, Mr. Smith has failed to identify any prejudice caused by the use of the information in *Golden China* or the disclosure of the information to the defendants in that case. In part, he argues that the filing in *Golden China* harmed him because Judge

---

(*footnote continued from previous page*)

substantially related case. 712 F.3d at 1354–55. In both cases, the party seeking information covered by a protective order sought leave from the court. Here, by contrast, defense counsel acted unilaterally. They never asked the Court to modify the Protective Order to allow use of the settlement agreements in collateral litigation involving Mr. Smith.

Bowbeer might have determined, contrary to this Court's conclusion, that the settlement information at issue is irrelevant and not required its production in the two other cases. While true, that possibility does not show prejudice because Mr. Smith has not been deprived of making any arguments in *Golden China* regarding the relevance of the information at the summary-judgment stage in that case. Indeed, he has made that very argument to Chief Judge John R. Tunheim. [*Golden China*, 17cv1862, ECF No. 104 at 22–23.] Nor has Mr. Smith shown that the filing or the disclosure to the other defendants revealed information that is truly confidential. Defense counsel filed the purportedly confidential information under seal in both of the other cases, and Mr. Smith has made no showing that defense counsel's actions have caused any harm to a legitimate privacy interest.[7] Accordingly, it would not be just to require defense counsel to withdraw the information used in *Golden China* or pay a financial sanction for the filing in that case.

Mr. Smith also argues that an order shifting the attorney's fees he incurred in bringing the motion to enforce the Protective Order is an appropriate compensatory sanction. Such a payment of expenses is mandatory under Fed. R. Civ. P. 37(b)(2)(C), unless the failure to obey a discovery order was "substantially justified or other circumstances make an award of expenses unjust." As explained above, at the time of the initial filing of the settlement-agreement information in *Golden China*, defense counsel reasonably believed that the parties had agreed to coordinate discovery among the three cases, including the use of "confidential" documents produced by Mr. Smith. The fact that defense counsel's understanding later proved to be wrong does not mean that the use of the information was unjustified when the initial *Golden*

---

[7] At the hearing, plaintiff's counsel suggested that the information contained in the settlement agreements was akin to a trade secret or other proprietary information that deserves protection under Rule 26(c). Though the Court has not been asked to rule upon the propriety of any confidentiality designation at this time, this argument borders on the frivolous. Nothing in the settlement agreements Mr. Smith was ordered to produce could reasonably be considered a trade secret, and they do not contain "other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Moreover, the specific settlement agreements at issue contain no confidentiality provision, indicating that neither Mr. Smith nor the parties with whom he resolved those previous ADA disputes believed that the terms of their settlements warranted protection from disclosure.

*China* filing occurred. Thus, the violation of the Protective Order in the initial *Golden China* filing was substantially justified and no fee-shifting is called for.

### B. The *Bierstube* Filing

Defense counsel's subsequent use of the information in *Bierstube* (and the additional references to the information in subsequent summary-judgment briefing in *Golden China*) was not as defensible. Although it was clear by this point the parties had no mutual understanding that the settlement agreements could be used in all three cases, defense counsel then used the information in *Bierstube* anyway. Defense counsel forged ahead with its summary-judgment filing in *Bierstube* based on their unilateral determination that Mr. Smith and his counsel had taken an unreasonable position regarding the Protective Order. Instead, defense counsel should have sought an extension of the summary-judgment briefing deadlines in the other two cases and asked this Court to modify the Protective Order.[8] Without making such a request, defense counsel used the information in *Bierstube*, which is expressly prohibited by the Protective Order.

The question remains: what should be done about the violation of the Protective Order through the *Bierstube* filing? The same reasons the Court found no prejudice in the context of the *Golden China* filing apply equally here. Mr. Smith has not been deprived of any opportunity to argue in *Bierstube* that the settlement information is irrelevant to the defendants' summary-judgment motion, and he has

---

[8] It is true, as defense counsel argue, that this Court had by this point discouraged the parties from bringing matters before it using the informal-dispute-resolution process that was employed early and often in this litigation. The Court did so to push the attorneys to work out their many disagreements about minor issues without the frequent need for the Court's intervention. However, the Court did not prohibit any party from bringing a formal motion, and defense counsel certainly could have filed a formal request for modification of the Protective Order prior to going forward with its chosen course of action in *Bierstube*. The Court notes that defense counsel again referred to the information in *Golden China* in its subsequent summary-judgment briefing even after the hearing on the motion for sanctions in this case, despite being on notice from the tenor of the hearing that counsel's conduct had been less than ideal. Defense counsel did not ask for permission to do so at that time either.

made that very argument to District Judge Patrick Schiltz. [*Bierstube*, 17cv1866, ECF No. 115 at 24.] Because the Court determines below that a modification of the Protective Order is appropriate, it would elevate form over substance for the Court to require defense counsel to withdraw the information from that docket and refile it later. To do so would only increase the burden and expense for the defendants in this case and in *Bierstube*, complicate matters for Mr. Smith's own summary-judgment briefing, and do nothing to bring *Bierstube* to an efficient and just resolution. Moreover, as described above, he has identified no harm by the disclosure of the settlement information to the *Bierstube* defendants. And because the information has not been publicly filed, Mr. Smith's concern that public attention to his ongoing ADA litigation will hamper his future settlement efforts is illusory.

As for the fee-shifting component of the sanctions Mr. Smith has requested, the Court cannot find that defense counsel's use of the information in *Bierstube* while this motion was pending was "substantially justified" as was the case with the initial *Golden China* filing. As explained above, there had been no modification of the Protective Order, "de facto" or otherwise, and it was no longer reasonable for defense counsel to presume such a modification had occurred. The Court recognizes that the March 1, 2019 deadline for having a dispositive motion served, filed, and heard in *Bierstube* created some time pressures for defense counsel and that they may have been reluctant to bring a request for modification of the Protective Order to the undersigned. However, that time pressure and reluctance cannot form the basis of a finding that the failure to comply with the Protective Order was "substantially justified" because to do so would encourage parties faced with inconvenience to resort to self-help.

Though defense counsel's violation of the Protective Order in *Bierstube* was not substantially justified, this does not automatically make it appropriate to award Mr. Smith the attorney's fees incurred in bringing his motion to enforce the protective order. Rule 37(b)(2)(C) provides that a court must order the party that fails to abide by a discovery order to pay the reasonable expenses and attorney's fees "caused by the failure." Mr. Smith filed his motion to enforce the protective order *before* the *Bierstube* filing occurred. The subsequent filing in *Bierstube* did not cause him to incur any of the fees he had already incurred in making that submission. The record makes clear he would have persisted in his motion regardless of what happened in *Bierstube* because he believed the filing in *Golden China* was a sanctionable violation of the Protective

Order on its own. And, as explored above, defense counsel's conduct with respect to that first filing *was* substantially justified.

Moreover, the Court finds that awarding Mr. Smith fees in connection with bringing this motion would be unjust under the circumstances of this case. Fed. R. Civ. P. 37(b)(2)(C) (providing that an award of expenses and fees is inappropriate if "other circumstances make an award of expenses unjust"). As discussed above, Mr. Smith's motion does not seek to remedy any real prejudice sustained in connection with either filing made by defense counsel in this case. Given that the settlement agreements themselves are not subject to any confidentiality provision, were filed under seal in the other cases, and Mr. Smith can challenge their relevance to all three cases, the purpose served by this motion is difficult to pin down. The history of this litigation suggests that it is at least plausible that the reason the motion was filed is an attempt to monetize a misunderstanding between the parties about the propriety of defense counsel's outside use of the settlement agreements and to make defense counsel's management of the cases more difficult. This possibility does not excuse defense counsel's actions in making the *Bierstube* filing without seeking permission, but it does support a finding that awarding fees to Mr. Smith would operate as an unwarranted windfall.

Finally, Mr. Smith has requested that defense counsel be sanctioned with a $20,000 fine to be paid to the Court. "[A] just order [under Rule 37(b)] may include the imposition of a sanction in the form of a monetary fine to be paid to the Court," even without a finding of contempt. *See U.S. ex rel. Johnson*, 2013 WL 1182905, at *7 (citing *Pereira v. Narragonsett Fishing Corp.*, 135 F.R.D. 24, 27 (D. Mass. 1991)). Under the circumstances of this case, the Court finds that a monetary fine is appropriate, but the request for a $20,000 penalty against defense counsel is neither commensurate to any harm suffered by the plaintiff nor necessary to deter future violations of the Protective Order. Here, the Court concludes that defense counsel shall pay to the Court the sum of $500 as a monetary sanction for their violation of the Protective Order in connection with the *Bierstube* filing.

### C    Moving Forward

The *Golden China* and *Bierstube* cases are ongoing. Defense counsel have used the settlement information in those cases, and as of January 29, 2019, Mr. Smith persists in his position that they should be prevented from continuing that use. Failure

to address what the parties should do moving forward will only ensure that additional motion practice takes place, distracting even further from the underlying merits of the litigation. Based on the entire history of this case and its frequent coordination with *Golden China* and *Bierstube*, the Court sees no reason that the Protective Order should continue to preclude defense counsel's use of and reliance on the settlement-agreement information in all three cases. Accordingly, the Protective Order is modified in this case to allow the use in *Golden China* and *Bierstube* of the settlement information that this Court ordered Mr. Smith to produce. This conclusion should not be read to preclude any of the judges handling the other two cases from making any ruling concerning the relevance or admissibility of that information to the disputes pending before them. Moreover, nothing about this ruling should be read to suggest that defense counsel can use the information at issue in any other litigation or share it with any other clients or counsel.

**IV. Order**

Consistent with the discussion above, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion to Enforce Protective Order and for Sanctions **(ECF No. 196)** is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is granted in part to the extent that Defense counsel shall pay a $500 monetary fine to the Court based on the violation of the Protective Order that occurred when it filed "confidential" materials in *Bierstube***.**

3. The motion is denied in all other respects.

4. The Protective Order (ECF No. 123) is **MODIFIED** as set forth in Part III.C. of this Order.

Date: February 4, 2019				*s/Katherine Menendez*
					Katherine Menendez
					United States Magistrate Judge