# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Scott Smith,

        Plaintiff,

v.

Bradley Pizza, Inc., and
Pamela M. Dahl,

        Defendants.

File No. 17-cv-02032 (ECT/KMM)

**OPINION AND ORDER**

---

Padraigin Browne, Browne Law LLC, Lake Elmo, MN, for Plaintiff Scott Smith.

Edward P. Sheu and Brian J. Linnerooth, Best & Flanagan, LLP, Minneapolis, MN, for Defendants Bradley Pizza, Inc. and Pamela M. Dahl.

---

Plaintiff Scott Smith has a disability that requires him to use a wheelchair. Defendant Bradley Pizza owned and operated a Domino's Pizza franchise in Red Wing, Minnesota, and Defendant Pamela Dahl owns the commercial property in which the Domino's is located. Smith alleges that Defendants violated and are violating Title III of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA") by failing to make the Domino's Pizza "fully accessible to and independently usable by individuals with disabilities." Under both the ADA and MHRA, Smith seeks declaratory and injunctive relief and attorney's fees. Under just the MHRA, he seeks damages and an order requiring Defendants to pay a civil penalty to the State of Minnesota. The Parties have presented several matters for decision. Defendants move for summary

judgment and the exclusion of expert testimony relied on by Smith. Smith moves for summary judgment and the exclusion of fact and expert testimony relied on by Defendants. Smith also objects to and seeks review of orders concerning non-dispositive pretrial matters entered by Magistrate Judge Katherine Menendez. Defendants' summary-judgment motion will be granted because the record evidence construed most favorably to Smith does not show that he suffered an injury sufficient to give him Article III standing. Magistrate Judge Menendez's orders will be affirmed because they are very reasonable.

I

Defendants' summary-judgment motion is premised on several arguments. Defendants argue Smith lacks standing to sue at all because he has suffered no Article III injury. Defs.' Mem. in Supp. at 15–22 [ECF No. 178]. They argue Smith lacks standing to seek injunctive relief in particular because he cannot show he faces a threat of future injury. *Id.* at 18–22. Assuming Smith has standing, Defendants argue that some of Smith's alleged ADA violations are not ADA violations as a matter of law. *Id.* at 23–30. To the extent Smith has identified bona fide ADA violations, Defendants argue that those violations either have been remedied or cannot be remedied because remediation is not "readily achievable," a defense to ADA liability. *Id.* Defendants argue that summary judgment should be entered against Smith's claims under the MHRA for these same reasons and because Smith failed to provide a pre-suit notice required by the MHRA. *Id.* at 31–32.

## A

The basic rules governing consideration of a summary-judgment motion are settled but worth repeating here. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).

Rule 56(c)(1) requires parties "asserting that a fact cannot be or is genuinely disputed" either to "support the assertion by . . . citing to particular parts of materials in the record" or to "show[] that the materials cited [by an adverse party] do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ P. 56(c)(1)(A)–(B). A district court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). A federal court facing a party's failure to cite "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), may elect from several options in the reasonable exercise of discretion. These include "consider[ing] the fact undisputed for purposes of the motion," "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it," or "issu[ing] any other appropriate order." Fed. R. Civ. P. 56(e)(2)–(4).

B

Defendants' argument that Smith cannot establish standing as a matter of law implicates subject-matter jurisdiction, so it must be considered first. And Defendants' decision to challenge subject-matter jurisdiction via a summary-judgment motion raises procedural issues that deserve explanation. There are material—and perhaps dispositive—differences between challenging subject-matter jurisdiction through a "factual-attack" dismissal motion under Rule 12(b)(1) and a summary-judgment motion under Rule 56. In a Rule 12(b)(1) motion asserting a factual attack, the district court considers matters outside the pleadings and resolves disputed facts, applying no presumption of truth to the non-moving party's allegations or evidence (or, for that matter, to the moving party's evidence). *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990). And while a district court's ultimate decision whether there is subject-matter jurisdiction in response to a factual-attack Rule 12(b)(1) motion is reviewed de novo on appeal, a district court's factual findings are reviewed for clear error. *Branson Label*, 793 F.3d at 915 (citation omitted). In a summary-judgment motion, as noted above, the court generally must believe the non-movant's evidence and draw all reasonable inferences from the evidence in the non-movant's favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam). And a district court's order granting summary judgment for want of subject-matter jurisdiction is reviewed de novo in its entirety. *U.S. ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1040 (8th Cir. 2002). The nature of the subject-matter jurisdiction inquiry and the functions served by Rule 12(b)(1) and Rule 56 have prompted

courts to conclude that the question of subject-matter jurisdiction should not be resolved on summary judgment. *See, e.g.*, *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam) ("In short, the question of jurisdiction is inappropriate for summary judgment, and discussing the interplay of Rule 12(b)(1) and Rule 56 verges on non sequitur." (citations omitted)).

It seems nonetheless appropriate here to adjudicate Defendants' challenge to subject-matter jurisdiction under Rule 56 for three reasons. First, the United States Supreme Court has at least implied (and perhaps said outright) that summary judgment is an appropriate process by which to assess the presence of subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). Second, though our Eighth Circuit Court of Appeals has approved of a district court recharacterizing a summary-judgment motion challenging subject-matter jurisdiction as a motion to dismiss under Rule 12(b)(1), *Osborn*, 918 F.2d at 728, it has not announced a general rule requiring that to be done and, in fact, has reviewed district-court orders entering summary judgment for want of subject-matter jurisdiction without questioning the propriety of that procedure, *see, e.g.*, *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1009–10 (8th Cir. 2018). Third, on the record presented here, the result would be the same if the question of subject-matter jurisdiction were adjudicated under Rule 12(b)(1).

## C

The general rules governing Article III standing are settled:

> Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, the plaintiff's standing to sue "is the threshold question in every

> federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

*Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). An injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). Moreover, to have standing to obtain injunctive relief, the plaintiff also must show that he is likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury. *See City of L.A. v. Lyons*, 461 U.S. 95, 102–03 (1983). "[S]tanding is based on the facts as they existed at the time the lawsuit was filed." *Steger*, 228 F.3d at 893. Standing "must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations and internal quotation marks omitted). By the summary judgment stage, a plaintiff must set forth "specific facts" establishing standing. *Lujan*, 504 U.S. at 561.

Eighth Circuit cases describe what a plaintiff must show to establish that he suffered an injury-in-fact to assert disability-discrimination claims under the ADA and MHRA. "To meet the injury-in-fact requirement, 'the party seeking review [must] be himself among the injured.'" *Steger*, 228 F.3d at 893 (alteration in original) (quoting *Lujan*, 504 U.S. at 560). To show injury, there must be a connection between the nature of a plaintiff's disability

and the alleged violations; granting an individual with a particular disability or class of disabilities "standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III." *Steger*, 228 F.3d at 893 (citation omitted). To be injured, as a general rule a plaintiff must have entered or visited the facility where the violations are alleged to have occurred. *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868, 871 (8th Cir. 2019). Where a facility contains "known barriers that the owner has no intention of remedying," a plaintiff "need not engage in the 'futile gesture' of visiting [the] building, [but] must at least prove knowledge of the barriers and that [he] would visit the building in the imminent future but for those barriers." *Steger*, 228 F.3d at 892 (quoting 42 U.S.C. § 12188(a)(1)); *see also Hillesheim*, 900 F.3d at 1011 (recognizing that a plaintiff "was not required to have a go of it" by attempting to traverse an allegedly inaccessible ramp to establish Article III standing). Having visited a building or facility, a plaintiff "need not encounter" every challenged barrier "to obtain effective relief." *Steger*, 228 F.3d at 894 (citation omitted). Thus, in *Steger*, the court permitted a blind plaintiff who had encountered at least one ADA violation in one part of a building to challenge several alleged "violations that could injure blind persons" in parts of the building the plaintiff never had been. *Id.* at 893–94.

*Hillesheim* is particularly instructive regarding what is necessary to establish injury-in-fact stemming from disability discrimination in the summary-judgment context. There, a wheelchair-using plaintiff alleged that three parking lot defects—the absence of vertical signs marking two handicap-accessible parking spaces, the lack of an adjacent access aisle in one of the spaces, and the presence of a garbage can near the top of an access

ramp—violated the ADA and the MHRA. *Hillesheim*, 900 F.3d at 1009–11. On appeal, the plaintiff challenged the district court's entry of summary judgment against his MHRA claims for lack of injury-in-fact. *Id.* at 1010. The Eighth Circuit determined that the plaintiff's evidence of injury with respect to the access-aisle and vertical-signage claims was insufficient because it "did little more than describe the alleged violations, other than stating [the plaintiff] was deterred from visiting the store in the future." *Id.* (footnote omitted). The plaintiff "did not explain how the lack of an access aisle or insufficient vertical signage injured him. [He] made no mention, for example, of whether he had difficulty identifying which spots were handicap accessible or even whether the alleged defects caused him to leave without entering the store." *Id.* The court reached a different result with respect to the plaintiff's garbage-can claim:

> Hillesheim's garbage-can claim is a different story. In contrast to the other claims, Hillesheim's declaration connected the placement of the garbage can to his decision to leave. It stated that he could not safely navigate the ramp without risking injury because the garbage can blocked his path of travel and trying to maneuver around it could have caused his wheelchair to tip over. By offering specific evidence that the allegedly dangerous circumstances caused him not to enter the store, Hillesheim did enough to establish an injury-in-fact.

*Id.* at 1011. The lessons of *Hillesheim* seem clear. A disabled individual does not suffer a cognizable injury merely by observing alleged barriers the individual thinks violate the ADA or MHRA; "specific evidence" must be identified explaining how the barrier or barriers injured that individual, and that evidence must show something more than that the individual was "deterred from visiting the store in the future." *Id.* at 1010 & n.1 (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018)).

As mentioned earlier, a plaintiff who seeks injunctive relief must also—to establish standing—show a "real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n.8; *see also Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). "'Past exposure to illegal conduct' is not enough absent present adverse effects." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *Lyons*, 461 U.S. at 102). "Intent to return to the place of injury 'some day' is insufficient." *Steger*, 228 F.3d at 893 (citing *Lujan*, 504 U.S. at 564). As the Supreme Court explained in *Lujan*, "'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (citation omitted); *see also Disability Support All. v. Heartwood Enters.*, *LLC*, 885 F.3d 543, 546 (8th Cir. 2018) (recognizing that an ADA plaintiff must prove barriers both caused him actual injury at the time he commenced the action and that he would visit the building in the "imminent future" but for those barriers). To determine whether a plaintiff faces the real and immediate threat of future injury in an accessibility suit under the ADA, district courts within the Eighth Circuit have analyzed four factors to ascertain whether the plaintiff will return to the business: "(1) the plaintiff's proximity to the [business]; (2) the frequency of plaintiff's nearby travel; (3) the plaintiff's past patronage; and (4) the definiteness of plaintiff's plans to return." *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1112 (D. Minn. 2014) (citing *Steelman v. Rib Crib No. 18*, Nos. 11-3433-CV-S-RED, *et al.*, 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012)); *see also Indep. Project, Inc. v. Elm Grove LLC*, No. 4:18-CV-1779-AGF, 2019 WL 498870, at *3 (E.D. Mo. Feb. 8, 2019); *White v.*

*Coin Laundry*, No. 8:16CV42, 2017 WL 2656101, at *2 (D. Neb. June 20, 2017); *Barfield v. Am. Enter. Props. Neb.*, No. 8:16CV19, 2016 WL 4684106, at *2 (D. Neb. Aug. 17, 2016).

D

Smith has failed to support his claim of injury-in-fact with "[citations] to particular parts of materials in the record" as required by Rule 56(c)(1)(A). Smith commenced this action in federal court, so ultimately it is his burden to establish the existence of subject-matter jurisdiction and, as part of that, his standing. *Brooks v. City of Des Moines*, 844 F.3d 978, 979 (8th Cir. 2016). Smith addressed injury-in-fact in his opening summary-judgment brief beginning at the top of page six and ending in the middle of page eight. Pl.'s Mem. in Supp. at 6–8 [ECF No. 187].[1] This section includes, by a rough count, more than twenty discrete fact assertions. The section does not, however, include any citation to a particular part or parts of materials in the record. The section does include one general reference to materials in the record. That appears in a sentence asserting that "*Smith's deposition testimony and Declarations* show that he has visited the property on a trip between his home in Burnsville and Winona on May 25, 2017." *Id.* at 7 (emphasis added). It is not clear whether or to what extent Smith intends to rely on the reference to his "deposition testimony and Declarations" to support other fact assertions in his brief beyond the quoted sentence. Regardless, mentioning "deposition testimony" generally is not the same thing as citing to particular parts of materials in the record. That reference

---

[1]     Smith does not address standing in his reply memorandum. *See* ECF No. 215.

might suffice if a deposition transcript was very short, but here the transcript of Smith's deposition runs to 160 pages. *See* Nov. 30, 2018 Sheu Decl. Ex. A ("Smith Dep.") [ECF No. 172-1]. Smith's reference to "his Declarations" is not particular, either. The docket in this case contains 227 entries. A review of those docket entries shows many declarations, but only one executed by Smith himself. Smith Decl. [ECF No. 41]. Perhaps, despite his reference to "Declarations" (plural), Smith intends to refer only to that declaration. He does cite the declaration several times in a paragraph appearing earlier in the "factual background" section of his brief. Pl.'s Mem. in Supp. at 2, 4. The declaration is two pages in length. In the declaration, Smith described several facts under penalty of perjury concerning his visit to the Bradley-Pizza-owned Domino's in May 2017, the ADA violations he believed he encountered, and how those alleged violations affect him generally. Smith Decl. ¶¶ 4–12. But relying only on this declaration would be unconventional. The declaration is dated December 1, 2017, *id.* at 2, more than nine months before his deposition, Smith Dep. at 1, and as will be explained, Smith's deposition in some respects arguably contradicted, in others added important details to, and in still others described new and significant facts not mentioned in, Smith's December 1 declaration. Perhaps Smith's citation to "his Declarations" intends to refer to some number of declarations that have been filed on his behalf in this case, if not all of them. But Smith identifies neither a particular declaration nor, just as important, a particular part of any declaration to establish injury-in-fact.

The question, then, is what to do about Smith's violation of Rule 56(c)(1). Rule 56(c)(3) requires a district court to consider only the particular parts of materials cited

in compliance with Rule 56(c)(1)(A).  If unsupported facts were excluded from consideration here, then it would seem likely appropriate to enter summary judgment in Defendants' favor on that basis on the issue of subject-matter jurisdiction.  Fed. R. Civ. P. 56(e)(2)–(3).  At the same time, Rule 56(c)(3) permits a district court discretion to consider materials in the record that are not cited in compliance with Rule 56(c)(1).  Here, it makes better sense to do that.  Defendants neither identified nor objected to Smith's violation of Rule 56(c)(1).  Much of Smith's deposition was cited by Defendants, resulting in a review of it.  Though the absence of citations in Smith's briefing prompted a much more in-depth review—line-by-line—of Smith's deposition, the thoroughness of that review was prompted also by the imprecise nature of some of Defendants' citations to the transcript.[2]

## E

Even accounting for all of Smith's deposition testimony, his December 1 declaration, and all other record evidence, Smith has not shown injury-in-fact stemming from his May 25, 2017 visit to the Defendants' property.  (For ease of reference, the property will be referred to from now on simply as "Bradley Pizza.")  The record facts

---

[2]      For example, at page seven of their opening brief, Defendants assert that Smith "testified he had no intent to patronize the 12 businesses he eventually sued after his May 25, 2017, trip."  Defs.' Mem. in Supp. at 7 [ECF No. 178].  For this assertion, Defendants cited parts of Smith's deposition testimony where counsel introduces himself to Smith (Smith Dep. at 8:13–19), where Smith admits there "were about ten other places in Red Wing and Winona that [he] sued [in addition to the businesses represented by Defendants' counsel in this and other cases brought by Smith] all kind of based on that same May 25, 2017 visit" (*id.* at 41:13–16), and where Smith acknowledges that apart from scrutinizing these businesses, there was nothing else that brought him to Red Wing and Winona that day (*id.* at 42:11–15).  How these citations, whether considered separately or together, support the assertion that Smith "had no intent to patronize the 12 businesses he eventually sued after his May 25, 2017, trip" is not clear.

regarding Smith's May 25, 2017 visit to and inspection of Bradley Pizza are clear and undisputed. Smith resides in Burnsville, Minnesota. Smith Dep. at 13:13–15. Smith is represented in this case by attorney Padraigin Browne of Browne Law LLC. Peter Hansmeier works at Browne Law as a paralegal and "access specialist." Nov. 30, 2018 Sheu Decl. Ex. B ("Hansmeier Dep.") at 9:13–10:19 [ECF No. 172-2]. On May 25, 2017, Smith and Hansmeier drove together to and around the cities of Winona and Red Wing, Minnesota, to scrutinize businesses for ADA compliance. Smith Dep. at 31:12–18, 39:2–20, 42:11–15. When Smith and Hansmeier arrived at Bradley Pizza, it was not open; it is undisputed that the restaurant opens for business every day at 10:30 a.m. Schwarzhoff Decl. ¶ 5 [ECF No. 34]. (Though Smith first testified in his deposition that the restaurant was open when he and Hansmeier arrived, Smith Dep. at 33:12–14, he later acknowledged that photographs taken during their site visit were time-stamped several minutes before 10:00 a.m., and he acknowledged that meant Bradley Pizza "wasn't quite open yet that day," *id.* at 105:9–16.) Smith conceded in his deposition that "when [he] decide[s] to sue businesses like [Bradley Pizza], it's kind of based on some obvious violations you can see from the street," such as the absence of parking signs or striping. *Id.* at 32:16–23. Smith did not, however, describe if this is how Bradley Pizza drew his attention. Smith also conceded that when he scrutinizes businesses for ADA compliance, he does not typically look to patronize the business. *Id.* at 39:2–6. Smith and Hansmeier stopped in the area of Bradley Pizza for only a brief time; Smith acknowledged that he and Hansmeier arrived at another nearby business to scrutinize it for ADA compliance around 10:00 a.m. *Id.* at 128:18–21. Smith remained inside the vehicle throughout. *Id.* at 87:2–4; Nov. 30, 2018

Sheu Decl. Ex. A at Ex. 11, Resp. to Interrog. No. 5 [ECF No. 172-1 at 84]; Pl.'s Mem. in Supp. at 7. Smith observed what he believed to be two ADA violations in the parking lot: an absence of accessible parking spaces, and an absence of any signs identifying and reserving accessible parking spaces. Compl. ¶ 24(a)–(b) [ECF No. 1]. Smith also observed what he believed to be an ADA violation with the entrance door: it appeared to have a threshold higher than one-half inch. *Id.* ¶ 24(c).[3]

When asked if he might "try to patronize" a business like Bradley Pizza, Smith explained that he "would not even attempt to do that because I've had too many times that I would go to get out of my car and there may not have been someone there when I got out, but I come back and someone is parked perfectly within the lines or perfectly adjacent to me that a normal able-bodied [person] could get in, but I couldn't." Smith Dep. at 32:24–33:7. When asked what damages Smith believes he has experienced as a result of Bradley Pizza's violations, Smith testified "it's like in the cost and just the going out there," which he identified to be the "gas and wear and tear" on his vehicle, and "not being able to go in and then having to go somewhere else." *Id.* at 100:6–19. Smith also testified:

> It's frustrating to go out in public and see places that I can't get into, it's a very common occurrence in my life that it gets really old going out and wanting to go to some place and then not

---

[3] In an amended complaint, Smith alleges that the "maneuvering clearance at the entrance to" Bradley Pizza and the parking lot had slopes greater than permitted by the ADA. Am. Compl. ¶¶ 19–20, 25–27 [ECF No. 118]. Smith alleges that these alleged violations were discovered during "later collected measurements" and a "September 13, 2017 site inspection." *Id.* Smith neither alleges nor cites evidence showing that he was involved with, or ever encountered or suffered injury owing to, these alleged violations.

being able to because of some kind of barrier of some sort, be
it a step, no parking, a steep incline.

*Id.* at 101:12–17.

These facts, construed reasonably in a light most favorable to Smith, do not permit the conclusion under controlling Supreme Court and Eighth Circuit law that Smith suffered Article III injury-in-fact from his brief stop at Bradley Pizza. This is a drive-by ADA case. Reduced to their essence, the undisputed facts are that Smith parked in the vicinity of a closed business for a very short time, observed what he believed to be ADA violations, took pictures while seated in the vehicle in which he was traveling, never exited the vehicle, and drove away.[4] He did not stay to attempt to enter or visit the business. It is true that Smith might be excused from such an attempt if the restaurant was open and if the facts showed that known barriers would have prevented it or posed a risk, but Smith did not introduce evidence to show that was the case during his brief stop. It also is true that Smith testified he is reluctant to park in a lot lacking a space with an access aisle for fear that he might be prevented from reentering his vehicle if someone were to park in an adjacent spot, *id.* at 33:1–11, and this concern is absolutely understandable. He has, however, identified no facts to show that this was a reasonable concern during his short stop at Bradley Pizza. In other words, he has not explained how the lack of an access aisle (or, for that matter, the

---

[4]     *See Straw v. City of South Bend*, No. 3:16-CV-342-JD, 2016 WL 6996047, at *4 (N.D. Ind. Nov. 30, 2016) ("[M]erely taking photographs on Memorial Day (when the government buildings were closed) for the sake of documenting the status of the parking spots [for ADA compliance] clearly does not grant Straw Article III standing—as he does not allege that in attempting to park, South Bend failed to accommodate his disability such that he suffered a personal injury or encountered barriers in violation of the ADA.")

lack of signage or threshold) injured him on this occasion. Unlike the plaintiff's Article

III-worthy garbage-can claim in *Hillesheim*, Smith has drawn no connection here between

the violations he observed and his decision to leave. Smith's damages testimony falls short,

also. His position that Bradley Pizza should pay as damages for the gas he purchased and

the wear and tear on his car associated with his May 25, 2017 travel to Red Wing and

Winona, *id.* at 100:6–19, is not advanced in his briefs. Smith's frustrations with the fact

that ADA non-compliance is "a very common occurrence in [his] life that gets really old,"

*id.* at 101:12–17, is—again—absolutely understandable. But the law is clear that an

individual's frustrations with widespread non-adherence to the law are not injury-in-fact.[5]

Nor has Smith identified evidence, necessary for his pursuit of injunctive relief, that

reasonably may be construed to show he faces a threat of future injury by Defendants that

is immediate and real. Smith testified that he purchases Domino's Pizza usually from "the

local Burnsville Domino's." *Id.* at 33:22–23. He also testified that he had never been to

Bradley Pizza before his May 25, 2017 stop, though he seemed to say that he had "driven

past" it before. *Id.* at 41:9–12. Smith acknowledged that there are "quite a few" Domino's

---

[5]     Defendants argue that three Eighth Circuit cases "read together . . . provide that in
order to establish Article III standing under the ADA, [Smith] must allege he was
*attempting to patronize* Domino's and was somehow injured in attempting to do so."
Defs.' Mem. in Supp. at 17 (emphasis added). In this context, to "patronize" means "[t]o
go to as a customer, especially on a regular basis." *The American Heritage Dictionary of
the English Language* 1290 (4th ed. 2009). Therefore, Defendants are understood to argue
at least that Smith cannot establish his standing to pursue this case unless he went to the
Bradley Pizza-owned Domino's "as a customer." The three cases Defendants cite as
establishing this rule are *Steger*, *Davis*, and *Hillesheim*. Defs.' Mem. in Supp. at 17. It is
not necessary here to determine whether Defendants' characterization of Eighth Circuit
law is correct because, regardless of his intentions, Smith has failed to identify facts
sufficient to permit a reasonable conclusion that he suffered injury-in-fact.

closer to his Burnsville residence and that Red Wing is roughly fifty miles from Burnsville. *Id.* at 39:9–15. Smith testified that he has a brother who lives in Stockton, Minnesota, which Smith testified is near Winona, and that he "go[es] down to that area fairly frequently," *id.* at 42:19–21, but when asked if he had any specific plans to visit Bradley Pizza or even the Red Wing area generally, Smith testified that he did not, *id.* at 98:22–24 (Q: "Do you know the next time you're going to go to the Red Wing area?" A: "No."). Smith did testify that he had since been to Red Wing to observe changes that had been made at various businesses he sued, including Bradley Pizza. *Id.* at 52:13–23. But he also acknowledged that he merely "[drove] into the parking lots" of these businesses and did not exit his vehicle at any time. *Id.* at 53:17–54:3. In his opening brief, Smith asserts (without citation) that he "plans to visit Winona (going through Re d Wing) [sic] in 2019," Pl.'s Mem. in Supp. at 8, but a careful read of Smith's deposition reveals no support for this assertion. Smith also supports his claim of future injury by pointing out (again without citation) that "Red Wing touts itself as a scenic and historic tourist destination and advertises its desirability within the Twin Cities." *Id.* This is no doubt true, but the same could be said of many cities in Minnesota, and Smith makes no attempt to link the fact that Red Wing may be a "tourist destination" to his activities. These facts show, at most, "some day" intentions, *Lujan*, 504 U.S. at 564 (citation omitted), insufficient to permit a reasonable person to conclude that Smith faces a real and immediate threat of future injury by Bradley Pizza. Smith does not know when he will next be in Red Wing, much less Bradley Pizza. He describes no concrete, imminent plans. He lacks standing to seek injunctive relief.

II

Smith objects to and seeks review of two non-dispositive discovery orders issued by Magistrate Judge Katherine Menendez. ECF Nos. 165, 226. On review of a non-dispositive order, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Local Rule 72.2(a)(3); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A ruling is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. A decision is contrary to law when a court fails to apply or misapplies relevant statutes, case law or rules of procedure." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (cleaned up). Smith's objections will be overruled. Magistrate Judge Menendez's orders correctly describe the law and could not reflect a more thorough, thoughtful exercise of discretion in response to the Parties' many motions.

A

Smith raises seven objections [ECF No. 165] to Magistrate Judge Menendez's order [ECF No. 159] entered on a series of discovery-related motions filed by him [ECF No. 138] and Defendants [ECF No. 144]. Smith's objections amount to a wholesale appeal of this order; there is not a decision he does not challenge.

*First*, Smith objects to Magistrate Judge Menendez's denial of his motion to compel Dahl to sign initial responses to interrogatories (that subsequently were supplemented and signed by Dahl) and her award of fee shifting against Smith on this motion. Nov. 13, 2018 Order at 2–4. The facts relevant to this aspect of Smith's motion are straightforward. Smith served a set of interrogatories on Dahl. Oct. 12, 2018 Browne Decl. Ex. A [ECF

No. 142-1]. Dahl provided initial responses, but Dahl did not sign the initial responses as required by Rule 33(b)(5). *Id.* Ex. B [ECF No. 142-2]. Dahl, however, subsequently served amended and supplemental responses to the interrogatories and signed them. *Id.* Ex. C [ECF No. 142-3]. Dahl's amended and supplemental responses were complete. In other words, they did not merely add to or clarify particular information in her original responses; they replaced those original responses entirely. Smith nonetheless sought an order compelling Dahl to sign her original responses. Pl.'s Mem. in Supp. of Mot. to Compel at 2 [ECF No. 139]. Magistrate Judge Menendez's decision to deny Smith's motion seeking this relief and her decision to shift fees against Smith in connection with this request were neither clearly erroneous nor contrary to law. Dahl was under an affirmative duty to supplement her interrogatory responses if they were "incomplete or incorrect, and if the additional or corrective information ha[d] not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(1)(A). As a practical matter, once Dahl served her amended and supplemental responses, she effectively announced her intention not to stand on her initial responses. Perhaps her initial responses were inaccurate, incomplete, or both. That happens. Regardless, the same reason or reasons that motivated Dahl to serve amended and supplemental responses likely motivated her reluctance to sign her original responses. A litigant reasonably should be reluctant to sign a pleading that turns out to be incomplete or inaccurate and requires amendment and supplementation. In his objections, Smith

identifies no legal or practical justification to require Dahl to sign her original responses.

Smith asserts only:

> The undersigned does not believe that there is such a thing as superseding discovery responses—for good policy-based reasons which are beyond the scope of this objection. Contrary to the Magistrate Judge's order, there is no such thing as a superseding discovery response.

Pl.'s First Obj. at 3. Alluding to unspecified policies does not identify applicable law or error, and it would make no sense to guess what policies Smith believes are relevant. The absence of a justification for Smith's position on this issue gave Magistrate Judge Menendez sufficient justification to order fee-shifting. As to the fee-shifting award, it also deserves mention that Magistrate Judge Menendez is seriously familiar with this case, having ruled on multiple pretrial disputes, placing her in the best position to determine whether a discretionary award of fees is warranted. *See, e.g.*, Sept. 22, 2017 Order [ECF No. 17]; Jan. 24, 2018 Order [ECF No. 72]; June 4, 2018 Order [ECF No. 107]; June 14, 2018 Order [ECF No. 117].

*Second*, Smith objects to Magistrate Judge Menendez's denial of his motion to compel Dahl to identify and produce "all documents substantiating [Dahl's] financial position for each of the past six years to the present" and her decision to shift fees against Smith in connection with this motion. Pl.'s First Obj. at 4–7. Magistrate Judge Menendez denied Smith's motion because she understood the Parties to have reached an agreement regarding the production of some responsive information and because Dahl's responses to additional requests served by Smith for similar information that were not subject to the Parties' agreement were not due at the time Smith brought his motion to compel, making

the motion "premature and unnecessary." Nov. 13, 2018 Order at 3–4. Smith argues that

his motion was based on discovery requests served July 24, 2018, and that Magistrate Judge

Menendez erred in concluding the motion was premature. Pl.'s First Obj. at 6–7. Smith

also asserts that "[t]here was no agreement to extend the time for responses to the subject

discovery." *Id.* at 6. Dahl describes things differently. Dahl says she provided financial

information responsive to Smith's July 24 requests before her October 5, 2018 deposition

and agreed to provide additional records after discussing the issue with Smith and gaining

clarification regarding the scope of Smith's request during her deposition. Defs.' Resp. to

First Obj. at 5–6 [ECF No. 181]. After the deposition, Smith served additional

interrogatories regarding Dahl's finances, responses to which would not have been due

until after Smith filed his motion to compel. Defendants argue:

> [T]o the extent there was confusion on which request for
> financial records plaintiff moved to compel (or how they
> differed from the ones plaintiff later requested and obtained),
> such confusion was solely plaintiff's own doing. Because
> defendants agreed to provide plaintiff, and did provide
> plaintiff, all requested financial records for Ms. Dahl, plaintiff
> lacked good faith under Rule 37 for bringing his motion before
> the records were due, and plaintiff's motion was not
> substantially justified.

*Id.* at 6. The record reflects that Dahl produced financial information prior to her

deposition. *See* Nov. 30, 2018 Sheu Decl. Ex. C ("Dahl Dep.") at 13:16–18 [ECF No. 173]

(referencing "financial information . . . [Dahl has] provided"). In response to Smith's

October 9, 2018 discovery request, Dahl disclosed sixty-three pages of financial documents

to Smith on November 9, 2018. Dec. 11, 2018 Sheu Decl. ¶ 2 [ECF No. 182]. Smith

identifies no deficiencies with Dahl's response. He identifies no financial information that

Dahl should have produced but did not. It would be improper to reverse an order denying a motion to compel documents that have, so far as can be discerned from the record, been produced. And again, the Parties' apparent disputes about what documents were produced when in response to which requests or agreements serve to highlight why Magistrate Judge Menendez's fee-shifting order deserves deference. Magistrate Judge Menendez had a front-row seat to a fact-intensive discovery dispute. Smith has identified no error that is clear in, or law that is contrary to, Magistrate Judge Menendez's decision to shift fees against Smith in connection with this motion.

*Third*, Smith objects to Magistrate Judge Menendez's determination that Bradley Pizza's financial position is irrelevant. Pl.'s First Obj. at 7–9. Smith argues that Magistrate Judge Menendez exceeded her power by purportedly determining that "that Bradley Pizza would ultimately bear no liability in this case due to [its] lease agreement" with Dahl. *Id.* at 8. That's not what Magistrate Judge Menendez did or said. Magistrate Judge Menendez explained:

> Mr. Smith suggests that finding this information is irrelevant based on the terms of the lease intrudes on merits decisions that are the ultimate province of the District Court on a dispositive motion. . . . Here the Court does not determine the merits of the readily-achievable affirmative defense asserted by the Defendants in this litigation. Rather the Court has concluded, based on the specific facts of this case and the clear language of the lease, that Bradley Pizza's financial condition has no bearing on the outcome of the readily-achievable defense.

Nov. 13, 2018 Order at 6–7. No clearer explanation why Smith's position is wrong could or need be provided here.

*Fourth*, Smith objects that Magistrate Judge Menendez did not rule on her motion to require Bradley Pizza to sign answers to Smith's second set of interrogatories. Pl.'s First Obj. at 9–10; *see also* Pl.'s Mem. in Supp. of Mot. to Compel at 1–2. Smith's interrogatories were dated July 24, 2018. Oct. 12, 2018 Browne Decl. ¶ 3, Ex. A [ECF Nos. 142, 142-1]. Defendants responded on August 27, 2018, but the responses were signed only by Defendants' counsel. *Id.* Ex. B. Defendants submitted supplemental and amended responses on October 4, 2018, which were signed by Defendants' counsel and Dahl. *Id.* Ex. C. Smith objected to Bradley Pizza's failure to sign the responses, and a representative of Bradley Pizza signed the responses on October 18, 2018. Defs.' Resp. to Mot. to Compel at 1–2 [ECF No. 152]; Oct. 19, 2018 Sheu Decl. ¶¶ 5–6 [ECF No. 153]. In other words, Smith had the signed responses he sought via his motion to compel before the hearing on the motion. Smith does not explain why it is necessary for a ruling to have been issued requiring Bradley Pizza to do something it had done already.

*Fifth*, Smith objects to Magistrate Judge Menendez's order that he produce non-confidential settlement agreements in prior ADA cases and documents evidencing the total compensation he has received from prior ADA cases for the period October 30, 2016, to October 30, 2018. Pl.'s First Obj. at 10–11. Specifically, he argues that the settlement information is irrelevant. *Id.* Magistrate Judge Menendez's order reflects careful consideration of a host of related factors bearing not only on relevance, but also proportionality and the interests of non-parties. Nov. 13, 2018 Order at 8–10. Smith identifies no law contrary to this ruling. Citing Fed. R. Evid. 408(a), Smith argues that this information would be inadmissible at trial. Pl.'s First Obj. at 11. But "[i]nformation within

[the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Smith's *sixth* and *seventh* objections will be addressed together. Smith objects to Magistrate Judge Menendez's order requiring him to reimburse Defendants for their prepayment of expert fees and expenses in connection with Hansmeier's deposition; Smith argues this order is improper under Rule 26(b)(4)(E). Pl.'s First Obj. at 11–13. Smith also objects to being ordered to pay the outstanding costs of the deposition of Defendants' designated expert, Julee Quarve-Peterson; Smith argues that Defendants did not satisfy their burden of establishing the reasonableness of their expert witness's fees. *Id.* at 13–14. These objections do not address the substance or thoughtfulness of Magistrate Judge Menendez's order with respect to these issues and provide no basis to find the order clearly erroneous or contrary to law. Nov. 13, 2018 Order at 10–17.

Defendants request permission "to submit, as part of their fee petition [before Magistrate Judge Menendez], those fees incurred in defending against plaintiff's objection." Defs.' Resp. to First Obj. at 15. Citing *Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013), Defendants argue that "[f]ees incurred in responding to a Rule 72 objection are embodied in the term 'reasonable expenses incurred in' a discovery motion" under Rule 37. Defs.' Resp. to First Obj. at 15. This request will be denied. Defendants have cited no controlling or intra-district authorities approving of a request like this. If Defendants were to seek sanctions for Smith's pursuit of this appeal or any part of it, it seems at least at first glance that the motion more appropriately should be addressed to the judicial officer responsible for adjudicating and resolving the appeal, here the district

judge.  And though federal law apart from Rule 37 might provide a reasonable basis upon which to seek sanctions here, *see* 28 U.S.C. § 1927, determining whether Smith's appeal multiplied these proceedings "unreasonably and vexatiously" or is sanction-worthy under some other applicable standard would entail costly collateral litigation with no predictable outcome.

B

Smith also objects to and seeks review of [ECF No. 226] an order [ECF No. 221] requiring Defendants' counsel to pay $500 to the United States District Court for the District of Minnesota as a sanction for violating the protective order [ECF No. 123] in this case.  Smith takes issue with three of Magistrate Judge Menendez's findings in this order: (1) that some of Defendants' counsel's actions, though violations of the protective order, were substantially justified; (2) that an award of attorney's fees to Smith would be unjust under the circumstances; and (3) that $500 payable to the Court was the appropriate sanction.  *See generally* Pl.'s Second Obj.  Smith argues that Magistrate Judge Menendez's order should be reviewed de novo because it "resolved all of the [sic] Smith's claims against that non-party with respect to the non-party's misconduct."  *Id.* at 3.

A majority of circuits treat sanctions as non-dispositive matters unless the sanction awarded by a magistrate judge disposes of a claim.  *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) ("Motions seeking Rule 37(b) sanctions for noncompliance with the Court's discovery orders are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction employed disposes of a claim." (citation and internal quotation marks omitted));

25

*Augustyniak Ins. Grp., Inc. v. Astonish Results, L.P.*, No. CA 11-464S, 2013 WL 998770, at *6 (D.R.I. Mar. 13, 2013) ("[O]nly the Seventh Circuit has blanketly held that motions for sanctions are to be treated as dispositive. Every other circuit . . . has held that motions for sanctions are generally non-dispositive." (citing *Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 426–30 (N.D. Ill. 2012))). Here, Smith requests attorney's fees pursuant to Rule 37(b)(2)(C), Pl.'s Second Obj. at 4, and requests sanctions for violation of a protective order, *id.* at 12, which is also authorized by Rule 37(b), *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012) (footnote omitted) ("Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order." (footnote omitted) (citing Fed. R. Civ. P. 37(b)(2))); *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007) ("Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions for the violation of discovery orders, which include protective orders issued under Federal Rule of Civil Procedure 26(c)." (citation omitted)). Magistrate Judge Menendez's order will be reviewed under the "clearly erroneous or contrary to law" standard set forth in Rule 72(a) and 28 U.S.C. § 636(b)(1)(A).

According to Rule 37(b)(2)(C): "[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Substantially justified means "justified to a degree that could satisfy a reasonable person." *Bah v. Cangemi*,

548 F.3d 680, 683 (8th Cir. 2008) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "A substantially justified position need not be correct so long as 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Bah*, 548 F.3d at 683–84 (quoting *Pierce*, 487 U.S. at 566 n.2). "An eligible party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *North Dakota v. Lange*, 900 F.3d 565, 569 (8th Cir. 2018) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). The definition of "unjust" in the context of Rule 37 is unclear. Some courts focus on the conduct of the moving party: "Circumstances may be unjust 'where the prevailing party . . . acted unjustifiably.'" *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 328 & n.1 (N.D. Ill. 2009) (quoting Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendments) (noting that the "'unjust circumstances' standard focuses on conduct of the moving party; the 'substantial justification' standard is not so limited").

Smith does not appear to argue that Magistrate Judge Menendez's order is contrary to law. His objections focus instead on her factual determinations. On that issue, a review of her order reveals that Magistrate Judge Menendez's determinations are not clearly erroneous. She reasonably concluded—over fourteen single-spaced pages—that Defendants' counsel was substantially justified in his initial filing of the settlement documents in the *Golden China* case, though not later in the *Bierstube* case. *See* Feb. 4, 2019 Order at 6. She just as reasonably determined that an award of fees to Smith would be unjust given the lack of prejudice, her knowledge of the "history of this litigation," and her concern that Smith may have filed the motion in "an attempt to monetize a

misunderstanding between the parties about the propriety of defense counsel's outside use of the settlement agreements and to make defense counsel's management of the cases more difficult"—a concern made all the more justified by Smith's untethered request for a $20,000 fine. *Id.* at 13. Notably, Smith does not object to that part of Magistrate Judge Menendez's order amending the protective order to permit Defendants' counsel to use the settlement documents in the *Golden China* and *Bierstube* cases going forward. If Smith's concern regarding the actual merits of the underlying discovery dispute were genuine, one would think he would have objected to that.

Finally, Smith objects to the amount of the sanction ordered by Magistrate Judge Menendez—$500. *Id.* at 12–13. Smith seeks an increase in that sanction amount to "appropriately reflect[] the seriousness" of the violation, though he does not say how much. *Id.* at 12. Smith's objection is based on what he argues are "at least two cases that illustrate that the Magistrate Judge abused her discretion": *NutriQuest, LLC v. Ameriasia Imps. LLC*, No. 18-cv-00390 (NEB/KMM), 2018 WL 5785952 (D. Minn. Nov. 5, 2018), and *U.S. ex rel. Johnson v. Golden Gate Nat. Sr. Care, L.L.C.*, No. 08-cv-1194 (DWF/JJK), 2013 WL 1182905 (D. Minn. Mar. 21, 2013). Pl.'s Second Obj. at 12. Not so. In *NutriQuest*, Magistrate Judge Menendez ordered a "modest" $500 sanction for an unintentional disclosure of confidential documents from a non-party, where plaintiff's counsel shared documents marked "attorney's eyes only" with the client. 2018 WL 5785952, at *1. Counsel took responsibility for the mistake and undertook efforts to ensure the documents were destroyed. *Id.* In *Golden Gate*, Magistrate Judge Jeffrey Keyes ordered a $5,000 sanction for defense counsel's disclosure of confidential documents to defense counsel in

a related state-court action, leading to the documents' use in the state-court litigation. 2013 WL 1182905, at *1–4. Magistrate Judge Keyes found that counsel was not forthcoming about what occurred and provided "frivolous and insincere" excuses for the disclosure, so much that he concluded the violation was intentional. *Id.* at *5–6. If these cases stand for anything, it is that appropriate sanctions orders are intensely fact-dependent and unique to the circumstances of each case. When you have seen one sanctions order, you have not seen them all. You have seen one sanctions order. Here, Magistrate Judge Menendez exercised her discretion, provided a thoughtful recitation of the relevant facts and the basis for her decision, and awarded sanctions of a type and in an amount that is eminently reasonable. Smith provides no justification for second-guessing this order, much less finding it to be clearly erroneous or contrary to law.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.     Defendants' motion for summary judgment and to exclude expert testimony [ECF No. 166] is **GRANTED IN PART** for lack of subject-matter jurisdiction and in all other respects is **DENIED** as moot;

2.     Plaintiff's motion for summary judgment and to exclude evidence [ECF No. 184] is **DENIED** as moot;

3.     Plaintiff's objection [ECF No. 165] to the November 13, 2018 Order [ECF No. 159] is **OVERRULED** and that Order is **AFFIRMED**;

4.     Plaintiff's objection [ECF No. 226] to the February 4, 2019 Order [ECF No. 221] is **OVERRULED** and that Order is **AFFIRMED**; and

5.     The action is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 12, 2019                          s/ Eric C. Tostrud
                                               Eric C. Tostrud
                                               United States District Court